Harold HENDERSON and Synergy Service Group, Inc., Plaintiffs,

v.

UNITED STATES of America, Defendants.

No. 98–C–1228.

United States District Court, E.D. Wisconsin.

May 9, 2000.

Douglas H Frazer, Frazer Schapiro & Rich, Milwaukee, WI, for plaintiffs.

Mary E Bielefeld, United States Department of Justice, Tax Division, Washington, DC, for defendant.

RANDA, District Judge.

## DECISION AND ORDER

This matter comes before the Court on defendant's motion to dismiss and defendant's motion for summary judgment. Plaintiffs, Harold Henderson ("Henderson") and Synergy Service Group, Incorporated ("SSGI")[1] request an abatement of employment taxes and interest and seek to recover economic damages for the Internal Revenue Service's ("IRS") refusal to release a lien. In Count I of the complaint, Henderson alleges that the lien filed against his property for a 1992 em-

ployment tax liability is invalid. Henderson alleges that the assessment upon which the lien is based was made after the expiration of the statute of limitations and in violation of the Internal Revenue Code's ("IRC") deficiency procedures. In Count II of the complaint, SSGI seeks an order abating its assessed taxes and interest for its 1993 employment tax liabilities. SSGI claims that the IRS is responsible for SSGI's failure to pay its 1993 employment taxes. SSGI also seeks a refund of the $200 it paid toward the 1993 employment tax assessment. Defendant's counterclaims request plaintiffs' payment of the 1992 and 1993 employment tax assessments.

## I

Henderson is a resident of the State of Wisconsin and SSGI is a Wisconsin corporation whose principle place of business is in Wisconsin. Defendant United States of America is a governmental entity which maintains an office in Milwaukee, Wisconsin, and which represents its agency, the IRS. (Defendant's Findings Of Facts ("DFOF") ¶¶ 1–3.)

### A. Tax Year 1992

On December 1, 1991, Henderson attempted to incorporate Synergy Service Group ("Synergy").[2] (Plaintiffs' Additional Findings of Fact ("PFOF") ¶ 1). Unaware that the incorporation was improper, the IRS issued Synergy a corporate Employer Identification Number ("EIN") in January of 1992.(Id.) Synergy began operations on March 1, 1992.(Id.) Synergy timely filed an Employer's Quarterly Federal Tax Return ("Form 941") with the IRS for the first, second and third quarters of 1992 using the assigned corporate EIN 39–1716336 ("Corporate EIN"). (DFOF ¶ 5, PFOF ¶ 1.) Synergy paid its federal employment

---

**1.** Henderson's sole proprietorship was the predecessor to SSGI.

**2.** "Synergy" refers to the company Henderson attempted to incorporate in 1991.

"SSGI" refers to the properly incorporated firm, allegedly incorporated in the first quarter of 1993. (Henderson Dep. at 53.)

tax liabilities for the first three quarters of 1992, although the IRS alleges that the third quarter payment was late.[3]

In December of 1992, after Synergy filed a Form 941 for the first, second and third quarters using the Corporate EIN, Henderson determined that Synergy had not been properly incorporated. (DFOF ¶ 7, PFOF ¶ 2.) He discussed options and corrective measures with accountant Tom Olson ("Olson") and attorney John Raasch ("Raasch"). (DFOF ¶ 8.) Olson subsequently contacted the IRS to determine how to proceed. (Id.¶ 9.) The IRS told Olson to apply for a sole proprietorship Employer Identification Number and submit corrected returns reflecting the change. (Id.) Olson received Employer Identification Number 39–1747144 ("Sole Prop EIN") for Harold Henderson d/b/a Synergy Service Group—a sole proprietorship ("Sole Prop"). (Id.¶ 10.) Sole Prop then submitted "corrected returns" for the first three quarters of 1992 on Forms 941 using the Sole Prop EIN. Sole Prop also filed a Form 941 for the fourth quarter of 1992 using the Sole Prop EIN. (Id.¶ 13.) The IRS received these four quarterly tax returns on February 23, 1993. (Pls.' Ex. 2–5.) According to the IRS, plaintiffs nei-

ther made their monthly tax deposits nor paid their taxes for the fourth quarter.[4] (DFOF ¶ 13; Pls.' Ex. 4–9.) After the IRS received the "corrected returns," it created a new Sole Prop account. (DFOF ¶ 14.) The IRS allegedly abated the assessments made against Synergy, transferred the payment credits to the Sole Prop account, and merged the corporate entity into the sole proprietorship entity.[5] (DFOF ¶¶ 14–15.) In this process, the IRS mistakenly abated the assessments made against Sole Prop for the first three quarters of 1992. (DFOF ¶ 16.) As a result, the IRS erroneously refunded Synergy's employment tax payments for the first three quarters of 1992.[6] (DFOF ¶ 17.) Henderson received checks totaling $23,152.55. (Id.¶ 18.)

On March 26, 1996, a delegate of the Secretary of the Treasury made a Combined Annual Wage Report assessment of employment tax in the amount of $29,-624.83 and an assessment of interest in the amount of $8,613.60 against Sole Prop for the tax period ending December 31, 1992.[7] (DFOF ¶ 20.) The IRS abated the $2,963.00 in penalties and the interest on these penalties assessed against Sole Prop on March 26, 1996. (DFOF ¶ 22.) On

3. According to the IRS, Synergy timely paid its federal employment tax liabilities for the first two quarters of 1992 and made a timely first installment of the tax deposit for the third quarter of 1992. (DFOF ¶ 6.) IRS records indicate that Synergy's employment tax liability for the third quarter, which was allegedly due on October 31, 1992, was not paid in full until January 4, 1993. (Hanson Decl. of Mar. 8, 2000 ¶ 1; Pls.' Ex. 4–6.) Plaintiffs contend that Synergy timely paid its employment tax liabilities for the first three quarters of 1992. (Plaintiffs' Responsive Findings of Fact ("PRFF") ¶ 6.)

4. Synergy allegedly made no deposits or payments for the fourth quarter of 1992 until June 14, 1993, when the IRS received $2,000. (Hanson Decl. of Jan. 6, 2000 ¶¶ 8–9.) The IRS refunded this deposit due to an erroneous payment transfer. *See infra* note 6. Plaintiffs contend that Sole Prop timely made its tax deposits for the fourth quarter. (PRFF ¶ 13; Henderson Decl. ¶ 2.)

5. Plaintiffs contend that the IRS transferred the transactions posted to the corporate account to the new sole proprietorship account, and that the corporate account remained open and continued to be used for transactions connected with SSGI after December 31, 1992. (PRFF ¶¶ 14–15.) The IRS responds that it did merge the corporate account into the sole proprietorship account, but that it later reopened the corporate account. (DRFF ¶ 14–15.)

6. The IRS did not refund $12,284.78 of the amount Synergy paid in employment taxes in the first three quarters of 1992. This amount was transferred to Sole Prop's account to cover the $12,284.78 allegedly due for its fourth quarter employment taxes. (Pls.' Ex. 4–9; Hanson Decl. of Jan. 6, 2000, ¶ 14.)

7. The $29,624.83 is approximately Sole Prop's corrected employment tax due for the first three quarters of 1992, which is the amount the IRS abated.

January 14, 1997, the IRS filed a Notice of Federal Tax Lien against Sole Prop with the Register of Deeds Office in Waukesha County, Wisconsin, in the amount of $41,-207.14. (DFOF ¶ 24.) The sum of assessed tax, assessed interest, plus accrued interest as of December 31, 1999, is $50,-118.17. (Id.¶ 25.)

On April 23, 1998, pursuant to IRC § 6325, Henderson requested a release of the tax lien, asserting the assessment for 1992 tax violated the deficiency assessment procedures of section 6213(a). (DFOF ¶ 35.) Henderson also argued that the statute of limitations had expired for an erroneous refund suit under section 7405, allegedly the IRS's only form of relief. (Id.) On May 1, 1998, the IRS denied Henderson's request for release of the tax lien. (Id.¶ 36.) On December 8, 1998, the IRS received Henderson's administrative claim for actual and economic damages under section 7432. (Id.¶ 38.) Henderson filed this lawsuit for actual and economic damages on December 18, 1998, before the IRS rendered a decision on the administrative claim. (Id.¶ 39.)

### B. Tax Year 1993

According to the IRS, SSGI failed to timely file a Form 941 (Employer's Quarterly Federal Tax Return) for each quarter in 1993. (DFOF ¶ 28.) Plaintiffs dispute this allegation. (PRFF ¶ 28.) The parties agree that SSGI sent the IRS a Form. 941 for all quarters of 1993 in September of 1997. (DFOF ¶ 30.) SSGI has not made any deposits or payments for its 1993 employment taxes. (DFOF ¶ 29.) A delegate of the Secretary of the Treasury made assessments of employment tax and interest against SSGI on November 3, 1997 for the tax periods and in the amounts set forth below:

| Tax Period Ended | Tax Assessed | Interest Assessed |
|---|---|---|
| Mar. 31, 1993 | $14,660.46 | $ 8,307.69 |
| June 30, 1993 | $12,206.18 | $ 6,534.46 |
| Sept. 31, 1993 | $13,077.38 | $ 6,598.27 |
| Dec. 31, 1993 | $14,646.51 | $ 6,947.02 |
| TOTALS | $54,590.53 | $28,387.44 |

(DFOF ¶ 31.) On April 30, 1998, SSGI paid $200 toward its 1993 employment tax assessment and filed a claim for refund and request for abatement, Form 843. (DFOF ¶ 42; Compl. ¶ 20.) The IRS denied the refund and abatement requests on July 21, 1998. (DFOF ¶ 43; Compl. 21.) SSGI brought suit on December 18, 1999. (DFOF ¶ 44 .)

As of December 31, 1999, the balance due for 1993 is $92,340.26, representing the sum of the unpaid assessed tax of $54,390.53, unpaid assessed interest of $25,169.46, unpaid assessed penalties of $0.02, and unpaid accrued interest of $11,-780.25. (Id.¶ 33.) The IRS abated all penalties (except $0.02) and interest on penalties assessed against SSGI for 1993 because of the IRS's error regarding the Sole Prop account for 1992. (Id.¶ 34.)

## II

### A. The Summary Judgment Standard

Under Rule 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law."

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The Court must construe all facts in a light most favorable to the non-moving party and draw all reasonable and justifiable inferences in favor of that party. *See Bombard v. Fort Wayne Newspapers, Inc.,* 92 F.3d 560, 562 (7th Cir.1996).

Summary judgment is no longer a disfavored remedy. "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Id.,* at 327, 92 F.3d 560 (citations omitted). It "can be a tool of great utility in removing factually insub-

stantial cases from crowded dockets, freeing courts' trial time for those that really do raise genuine issues of material fact." *United Food and Commercial Workers Union Local No. 88 v. Middendorf Meat Co.*, 794 F.Supp. 328, 330 (E.D.Mo.1992). Thus, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). While a *material* fact is one that is "outcome determinative under the governing law", *Whetstine v. Gates Rubber Co.*, 895 F.2d 388, 392 (7th Cir. 1990), a *genuine* issue as to that material fact is raised only "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505.

The analysis to determine when a material issue of fact is *genuine* necessarily requires "some quantitative determination of sufficiency of the evidence." Childress, *A New Era for Summary Judgments: Recent Shifts at the Supreme Court,* 116 F.R.D. 183, 186 (1987). "Of course, a court still cannot resolve factual disputes that could go to a jury at trial, ... [b]ut no longer need the trial court leave every sufficiency issue for trial or a later directed verdict motion." *Id.* "A district judge faced with [a summary judgment motion] must decide, subject of course to plenary appellate review, whether the state of the evidence is such that, if the case were tried tomorrow, the plaintiff would have a fair chance of obtaining a verdict. If not, the motion should be granted and the case dismissed." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1572–73 (7th Cir.1989) (citations omitted). Thus, a party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). "[A] party must produce 'specific facts showing that there remains a genuine issue for trial' and evidence 'significantly probative' as to any [material] fact claimed to be disputed." *Branson v. Price River Coal Co.*, 853 F.2d 768, 771–72 (10th Cir.1988). "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson,* 477 U.S. at 249–50, 106 S.Ct. 2505. Nor may "[a] party to a lawsuit ... ward off summary judgment with an affidavit or deposition based on rumor or conjecture. 'Supporting and opposing affidavits shall be made on personal knowledge....'" *Palucki,* 879 F.2d at 1572 (7th Cir.1989). Such principles insure that summary judgment is utilized "when it can be shown that a trial would serve no useful purpose." *Windham v. Wyeth Labs., Inc.,* 786 F.Supp. 607, 610 (S.D.Miss.1992).

## B. 1992 Tax Year

Plaintiffs assert that the Court has jurisdiction for Count I of the complaint[8] under 28 U.S.C. § 1340 and IRC § 7432. (Compl. ¶ 4; Pls.' Br. in opp'n to mot. to dismiss at 2.) Defendant moves to dismiss Count I arguing that the Court lacks jurisdiction because the Government has not waived its sovereign immunity. (Def.'s Br. in supp. of mot. to dismiss at 5.)

"Under settled principles of sovereign immunity, 'the United States, as sovereign, is immune from suit, save as it consents to

---

8. Count I of the Complaint seeks damages under IRC § 7432 for an allegedly improper lien the IRS levied against Henderson's property related to 1992 employment tax liabilities.

be sued ... and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit.'" *U.S. v. Dalm,* 494 U.S. 596, 608, 110 S.Ct. 1361, 108 L.Ed.2d 548 (1990) (quoting *U.S. v. Testan,* 424 U.S. 392, 399, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976)). Therefore, unless the United States has waived its immunity, the Court has no jurisdiction and Count I must be dismissed. "Waivers of the Government's sovereign immunity, to be effective, must be 'unequivocally expressed.'" *U.S. v. Nordic Village, Inc.,* 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (quoting *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 95, 111 S.Ct. 453, 112 L.Ed.2d 435 (1990)).

 In this case, IRC § 7432 does not apply and therefore cannot provide the basis for the Government's alleged waiver of sovereign immunity. Section 7432 provides for damages where the IRS has negligently or knowingly failed to release a lien within thirty days of determining that the related assessment is unenforceable or fully satisfied, or upon the IRS's acceptance of a bond conditioned upon the payment of the amount assessed.[9] Plaintiffs contend that they paid the IRS's 1992 quarterly employment tax assessments in full. Even accepting plaintiffs' contention, plaintiffs do not allege to have satisfied the IRS's 1996 assessment.[10] Similarly, plaintiffs do not claim to have furnished the Secretary a bond or that the Secretary found the liability for the 1996 assessment to be legally unenforceable. Therefore,

plaintiffs cannot base the Government's alleged waiver of sovereign immunity on section 7432. In addition, the Court does not have jurisdiction under IRC § 7422, as plaintiffs have not filed a formal claim for a refund relating to the 1996 assessment. *See Goulding v. U.S.,* 929 F.2d 329, 331 (7th Cir.1991) ("A timely, sufficient claim for refund is a jurisdictional prerequisite to a refund suit [under section 7422]."); *Martin v. U.S.,* 833 F.2d 655, 658–59 (7th Cir.1987) (same). Therefore, defendant's motion to dismiss pursuant to Rule 12(b)(1) for lack of subject matter jurisdiction is granted.

In the event that the appellate court disagrees with this Court's ruling on jurisdiction, defendant still prevails on its motion for summary judgment. Plaintiffs cannot show that the assessment underlying the tax lien is invalid. The Court will accept the following allegations of the plaintiffs in opposition to defendant's motion for summary judgment: (1) the corrected 1992 quarterly employment tax returns accurately reflect plaintiffs' employment tax liabilities for 1992, (2) the IRS's assessments based on these corrected returns are perfect and complete in all material ways, and (3) these tax liabilities were timely and fully paid. (Pls.' Br. in opp'n to summ. j. at 2; 15–16). Although plaintiffs have not produced sufficient evidence for a reasonable jury to find that the plaintiffs paid their fourth quarter taxes,[11] the Court will as-

---

**9.** Section 7432(a) states: "If any officer or employee of the Internal Revenue Service knowingly, or by reason of negligence, fails to release a lien under section 6325 on property of the taxpayer, such taxpayer may bring a civil action for damages against the United States in a district court of the United States."

Section 6325(a) states: "[T]he Secretary shall issue a certificate of release of any lien imposed with respect to any internal revenue tax not later than 30 days after the day on which:

(1) The Secretary finds that the liability for the amount assessed, together with all interest in respect thereof, has been fully satisfied or has become legally unenforceable; or

(2) There is furnished to the Secretary and accepted by him a bond that is conditioned upon the payment of the amount assessed ... within the time prescribed by law...."

**10.** The March 26, 1996 assessment, related to an erroneous refund of 1992 employment taxes, is a valid assessment. *See infra* pp. 1000–04.

**11.** Plaintiffs' only evidence indicating payment of their fourth quarter tax liability is Henderson's assertion. (Henderson Decl. ¶ 2.) Plaintiffs do not present canceled checks, bank account statements, or any other evidence showing that they paid the fourth quarter taxes. The Court finds plaintiffs' evidence insufficient. *See Liu v. T & H Machine, Inc.,*

sume that the liability for this quarter is sufficiently satisfied by a payment transfer.[12] Further, the parties agree that the IRS erroneously refunded the amounts Synergy paid for its employment tax liabilities for the first three quarters of 1992, resulting in a refund of $23,152.55. On March 26, 1996, the IRS made an assessment to recoup this erroneous refund.

■ Plaintiffs correctly point out that when an assessment is paid, it is extinguished. *See O'Bryant v. U.S.*, 49 F.3d 340, 347 (7th Cir.1995) ("When a taxpayer mails the IRS a check in the full amount of his assessed tax liability, and the IRS cashes it, the taxpayer's liability is satisfied, and unless a new assessment is made later on, any erroneous, unsolicited refund that the IRS happens to send the taxpayer

must be handled on its own terms, not under the rubric of the assessed liability.")[13] However, the Court has not been made aware of any provision or precedent which prevents the IRS from making a second assessment of a taxpayer's liability for a given year under either IRC § 6201 or § 6204[14] while the limitations period is still open.[15] To the contrary, case law supports the proposition that the IRS has the authority to bring a new assessment for the 1992 tax funds which were erroneously refunded. *See O'Bryant v. U.S.*, 839 F.Supp. 1321, 1325 (C.D.Ill.1993), *aff'd*, 49 F.3d 340 (7th Cir.1995) ("[M]ost courts hold that the government is not limited to a Section 7405 action to recover an erroneous refund, but may collect by assessment in the ordinary manner, because the refund creates an underpayment.") (citations omitted).[16]

191 F.3d 790, 797 (7th Cir.1999) ("[T]he party opposing a summary judgment motion may not rest upon mere denials or allegations in the pleadings, but must set forth specific facts sufficient to raise a genuine issue for trial.") (citations omitted). In contrast, defendant's computer records show that the IRS received no fourth quarter payments until June 14, 1993, when the IRS received $2000. (Pls.' Ex. 4–9; Hanson Decl. of Mar. 8, 2000 p. 2 ¶ 2, p .3 ¶ 8.) The IRS refunded this amount to the plaintiffs. (Id.)

12. When the IRS issued plaintiffs' erroneous refund it transferred $12,282.78 from plaintiffs' previous payments to offset plaintiffs' alleged unpaid fourth quarter liability. (Pls.' Ex. 4–9; Hanson Decl. of Jan. 6, 2000, ¶ 14.)

13. *See also Mildred Cotler Trust v. U.S.*, 184 F.3d 168, 171–72 (2nd Cir.1999); *U.S. v. Wilkes*, 946 F.2d 1143, 1152 (5th Cir.1991) ("As a taxpayer makes payment against a tax assessment, the assessment is extinguished in the amount paid and cannot be revived by the IRS' giving the taxpayer an unsolicited, erroneous refund."); *Clark v. U.S.*, 63 F.3d 83, 87 (1st Cir.1995) ("[W]hen a taxpayer tenders payment on a tax assessment, that payment extinguishes the assessment to the extent of the payment.... [A]n erroneous refund does not revive an extinguished assessment.")

14. Section 6201 grants the IRS authority to make assessments and section 6204 authorizes supplemental assessments. Section 6204(a) states: "The Secretary may, at any time within the period prescribed for assess-

ment, make a supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect." Assuming that the 1992 assessments are accurate and therefore not imperfect or incomplete in any material way, IRC § 6201 seems to be the more appropriate statutory vehicle for the 1996 assessment. *See Brookhurst v. U.S.*, 931 F.2d 554, 557 (9th Cir. 1991); *Purcella v. U.S.*, 1992 WL 8723, at *3 (D.Colo. Jan. 14, 1992). *But see Singleton v. U.S.*, 128 F.3d 833 (4th Cir.1997) (Niemeyer, J., dissenting) (labeling an assessment based on an erroneous refund a supplemental assessment).

15. The March 26, 1996 assessment was made within the three year limitations period for plaintiffs' 1992 employment tax liabilities. Under IRC § 6501(a), the IRS must assess a tax within three years after the return is filed. But where a return for employment tax for any period ending with or within a calendar year is filed before April 15 of the succeeding calendar year, section 6501(b)(2) deems the return filed on April 15 of such calendar year. Since the employment tax returns for 1992 were all filed before April 15, 1993, they are, under section 6501(b)(2), deemed filed on April 15, 1993. *See* Treas.Reg. § 301.6501(b)–1(b).

16. *See also Bilzerian v. U.S.*, 887 F.Supp. 1509, 1514 (M.D.Fla.1995), *rev'd on other grounds*, 86 F.3d 1067 (11th Cir.1996) ["[The IRS] is not limited to filing an action under

The Court must now determine whether the method the IRS employed in its 1996 assessment is proper. For all assessments, the IRS is required to provide notice and demand for payment of assessed tax under IRC § 6303. The IRS did provide timely notice and demand for payment of the March 26, 1996 assessment, satisfying section 6303. (Pls.' Ex. 5A–1 – 5A–2.) However, the IRS does not claim that it followed the deficiency procedures of IRC § 6213(a) in making the 1996 assessment. (Def.'s Br. in supp. of summ. j. at 13.) The Court holds that these procedures are unnecessary and that the IRS's assessment method is proper.

The deficiency procedures of IRC § 6213(a) apply when the Secretary determines there is a deficiency. *See* IRC § 6212(a). "Deficiency" is a defined term under the IRC.[17] A deficiency is equal to the tax due under the IRC, minus the taxpayer's calculated amount of tax and prior deficiency assessments, plus prior rebates. *See Singleton v. U.S.*, 128 F.3d 833, 840 (4th Cir.1997) (Niemeyer, J., dissent-

ing). "Rebate" is also a defined term under the IRC.[18] A rebate is money sent to the taxpayer because the taxpayer's calculation (plus prior deficiency assessments) was greater than the tax code liability (minus past rebates). *See Id.* In this case, plaintiffs' employment tax liability under the IRC was the same as the tax liability plaintiffs reported on their corrected 1992 quarterly returns. Therefore, there was neither a deficiency nor a rebate. Plaintiffs' erroneous refund was not a 'rebate' refund, as the refund was the result of an IRS computer or clerical error.[19]

 When the IRS issues a nonrebate refund, it does not create a "deficiency" within the Code's definition of that term. "When interpreting a statute, we look first to its language." *Pittway Corp. v. U.S.*, 102 F.3d 932, 934 (7th Cir.1996). IRC § 6211's comparison of tax liability under the IRC and tax liability as reported by the taxpayer has no application to nonrebate refunds, which are created by computer or clerical errors.[20] The Court, in adherence to the IRC's statutory lan-

§ 7405 to recover an erroneous refund. Where the IRS has made [a] new assessment [of] the erroneously refunded amount, the IRS may collect this amount through ordinary collection procedures within a ten (10) year period after the assessment of the tax.] 26 U.S.C. § 6502." (citations omitted); *Purcella v. U.S.*, 1992 WL 8723, at *3 (D.Colo. Jan.14, 1992) ("The IRS could have recovered the [erroneous] refund by assessment in the ordinary manner. Yet it never assessed the [erroneous] refund as a tax and the previous assessment had already been satisfied.") (citations omitted).

17. IRC § 6211(a) defines deficiency as "the amount by which the tax imposed by [the Code] exceeds the excess of ... the amount shown as the tax by the taxpayer upon his return ... plus ... the amounts previously assessed (or collected without assessment) as a deficiency over ... the amount of rebates, as defined in subsection (b)(2), made."

18. Under IRC § 6211(b)(2), "[t]he terms 'rebate' means so much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed ... was less than the excess of the amount specified [as a deficiency] over the rebates previously made."

19. *See O'Bryant*, 49 F.3d at 342 (7th Cir.1995) ("Since 1944 the Tax Code has recognized two types of refunds: rebate refunds and nonrebate refunds. Rebate refunds are issued on the basis of some substantive recalculation of the tax owed, e.g., if the tax due under the Code was less than the amount shown on the return and previously assessed. Nonrebate refunds are sent to the taxpayer not because the IRS determines that the tax paid is not owing but because of mistakes, typically clerical or computer errors.")

20. *See Groetzinger v. Commissioner of Internal Revenue*, 69 T.C. 309, 315–16, 1977 WL 3623 (1977) ("[The IRS's] accounting error led [it] to believe that the estate had paid ... more than the tax imposed. Thus the refund was made for a reason other than that specified in section 6211(b)(2) and did not result in a rebate.... We must therefore conclude that the erroneous refund did not result in a deficiency. Nevertheless ... there is clearly an underpayment of tax [a]nd the liabilities asserted herein are in fact based on that underpayment.")

guage, must conclude that the deficiency procedures of IRC § 6213(a) are not required in the assessment of a nonrebate refund, as such an assessment is not for a "deficiency." *See U.S. v. Ron Pair Enters., Inc.,* 489 U.S. 235, 241, 109 S.Ct. 1026, 103 L.Ed.2d 290 (1989) (Where the language of the statute is clear, the Court must "enforce it according to its terms.") (quotations omitted).[21]

The Fourth Circuit specifies the proper method of assessing an erroneous refund in *Singleton v. U.S.,* 128 F.3d 833 (4th Cir.1997) (2–1 decision). The *Singleton* court concludes that the IRS must follow the assessment procedures in 26 U.S.C. § 6213(a), including sending a notice of deficiency, before issuing a supplemental assessment to recover an erroneous refund. *Singleton,* 128 F.3d at 837 (4th Cir. 1997).

> [S]ections 6204(b) [covering supplemental assessments] and 6213(a) prohibit the IRS from issuing a supplemental assessment without first issuing a notice of deficiency and giving the taxpayer an opportunity to contest the assessment in Tax Court. The Court finds no applicable exception to these procedural requirements. Section 6213(a) applies to all assessments; it does not distinguish between assessments intended to reclaim rebate refunds versus those intended to reclaim non-rebate refunds.

*Id.* The Court finds the reasoning of the dissent in *Singleton* more persuasive.

> The Tax Code does not prohibit supplemental assessments without notice of a deficiency. It prohibits supplemental

assessments of a deficiency without notice of a deficiency.... In this regard, the majority misreads section 6213(a) to apply to all assessments. That section, however, reads only to require a notice of deficiency when there is a deficiency at stake. When no deficiency is involved, as is the case before us, [because the IRS's refund is a nonrebate refund] then the notice of deficiency is not required.

*Singleton,* 128 F.3d at 840 (4th Cir.1997) (Niemeyer, J., dissenting). In *O'Bryant,* the Seventh Circuit provides support for the *Singleton* dissent and the application of the IRC's limitations on the definition of "deficiency." "The rebate/nonrebate distinction arises from the definition of 'deficiency' contained in 26 U.S.C. § 6211; rebate refunds can be included in deficiency calculations, while nonrebate refunds cannot." *O'Bryant,* 49 F.3d at 340 (7th Cir. 1995). The IRS is not required to follow the deficiency procedures of IRC § 6213(a) when assessing a nonrebate refund. Therefore, the IRS's failure to follow those deficiency procedures in its 1996 assessment of plaintiffs' nonrebate refund does not invalidate that assessment or the resulting lien.[22]

### C. 1993 Tax Year

Plaintiffs request that their unpaid 1993 employment taxes and interest be abated. Plaintiffs contend that the IRS's "perfidious" course of dealing regarding their 1992 and 1993 tax liabilities is sufficient reason to abate their unpaid 1993 tax liabilities under the equitable principles of waiver,

---

**21.** "The procedural provisions of the Code appear to be the creation of a scholastic, but whimsical, mind. In general, however, the courts take them literally: the game must be played according to the rules." *Philadelphia & Reading Corp. v. U.S.,* 944 F.2d 1063, 1070 (3rd Cir.1991).

**22.** In addition, in this case the underlying tax liabilities are for employment taxes, which are not contemplated by IRC §§ 6211 or 6213(a). Both IRC §§ 6211 and 6213(a) specifically apply to any tax imposed by subtitle

A (concerning income tax) or subtitle B (concerning estate and gift tax), chapter 41 (public charities), 42 (private foundations and certain other tax-exempt organizations), 43 (qualified pension, etc., plans), or 44 (qualified investment entities). Employment tax liabilities are found under subtitle C, chapters 21 and 24 of the IRC and therefore do not fall under the IRC's definition of "deficiency." *See Cutaiar v. U.S.,* 1992 WL 198927, at *6 (E.D.Pa. Aug.11, 1992); *Mrizek v. Long,* 187 F.Supp. 830 (N.D.Ill.1959).

estoppel, duress, contributory negligence, latches and release. (Pls.' Br. in opp'n to summ. j. at 19.) Plaintiffs offer no arguments in support of their contentions. The Court will not consider a wholly unsupported laundry list of legal theories. Plaintiffs also contend that the IRS abused its discretion by denying their request for abatement of interest on their unpaid 1993 employment tax liabilities. As an initial matter, the Court must determine whether it has jurisdiction to decide this claim. Plaintiffs filed their Form 843 on April 30, 1998, requesting abatement of interest under 26 U.S.C. § 6404(e). The IRS disallowed this interest abatement request on July 21, 1998. SSGI brought suit on December 18, 1999.

 Prior to the enactment of IRC § 6404(i) on July 30, 1996,[23] an IRS decision not to abate interest under section 6404(e) was not subject to judicial review. *See Carlson v. U.S.*, 126 F.3d 915, 920 (7th Cir.1997) ("[Abatement of interest under section 6404(e)(1) ] by the Secretary is within his sole authority, and as such it is beyond the scope of judicial review.")[24] However, section 6404(i) grants jurisdiction to the Tax Court to review a denied abatement request which is filed and denied after July 30, 1996. *See* Pub.L. No. 104–168, Title III § 301(b), 110 Stat. 1457, codified at 26 U.S.C. § 6404(i); *Carlson,* 126 F.3d at 920 (7th Cir.1997); *Krugman v. Commissioner of Internal Revenue,* 112 T.C. 230, 239, 1999 WL 249029 (1999). Section 6404(i) applies to requests for interest abatement relating to tax liabilities

incurred prior to 1996, as long as the abatement request was filed after July 30, 1996 or was pending with the IRS on that date. *See Id. See also Banat v. Commissioner of Internal Revenue,* 109 T.C. 92, 94, 1997 WL 438301 (1997). Here, plaintiffs filed their abatement request with the IRS on April 30, 1998. Therefore, this Court lacks jurisdiction over plaintiffs' request for interest abatement under section 6404(e) as section 6404(i) grants jurisdiction specifically to the Tax Court.[25]

**NOW, THEREFORE, BASED ON THE FOREGOING, IT IS HEREBY ORDERED THAT:**

1. Defendant's motion to dismiss Count I pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction is granted.

2. Defendant's motion for summary judgment is granted.

3. Defendant's counterclaims are granted. Defendant's requests for costs and fees are denied.

**SO ORDERED.**

---

**23.** 26 U.S.C. § 6404(i) was redesignated from subsection (g) by the IRS Restructuring and Reform Act of 1998.

**24.** *See also Argabright v. U.S.,* 35 F.3d 472, 475 (9th Cir.1994) (" '[T]he language, structure, and legislative history of [section 6404] demonstrate Congress's intent to commit the abatement of interest to the agency's discretion. Although the statutory language does not expressly preclude judicial review, it provides no meaningful standard against which to judge the agency's exercise of discretion.' ") (quoting *Selman v. U.S.,* 941 F.2d 1060, 1063 (10th Cir.1991)).

**25.** At least one commentator questions whether district courts have implicit jurisdiction over these challenges. *See* Stein, *Avoid Interest Charges Arising From IRS Errors and Delays,* 62 Prac. Tax Strategies 209 (1999). Even if the Court properly exercised jurisdiction, plaintiffs would still be required to meet the 180 day limitation in section 6404(i)(1). Plaintiffs failed to file their action within 180 days of the Secretary's refusal to abate the interest.