**PUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

CARROLL EUGENE SINGLETON, and
SHEILA SINGLETON,
Plaintiffs-Appellants,

No. 96-1924

v.

UNITED STATES OF AMERICA,
Defendant-Appellee.

Appeal from the United States District Court
for the Eastern District of North Carolina at Raleigh.
W. Earl Britt, District Judge.
(CA-95-15-5-BR)

Argued: May 7, 1997

Decided: October 20, 1997

Before NIEMEYER and HAMILTON, Circuit Judges, and
LEGG, United States District Judge for the
District of Maryland, sitting by designation.

_____

Reversed by published opinion. Judge Legg wrote the majority opin-
ion, in which Judge Hamilton joined. Judge Niemeyer wrote a dis-
senting opinion.

_____

**COUNSEL**

**ARGUED:** David D. Dahl, Charles Edward Nichols, Jr., MANNING,
FULTON & SKINNER, Raleigh, North Carolina, for Appellants.
Thomas Vincent Linguanti, UNITED STATES DEPARTMENT OF

JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Loretta C. Argrett, Assistant Attorney General, David English Carmack, Janice McKenzie Cole, United States Attorney, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

_____

**OPINION**

LEGG, District Judge:

This appeal arises from an entry of judgment for the government by the United States District Court for the Eastern District of North Carolina. On May 8, 1996, the district court granted the government's motion for summary judgment, denying the Singletons' cross-motion for summary judgment. The court subsequently amended its judgment on June 24, 1996, to adjust the calculation of interest. The Singletons filed this appeal.

I.

In August 1988, the Singletons filed a joint federal individual income tax return for 1987. With their return, they submitted a Form 3800 - General Business Credit, indicating a business credit carryforward of $92,429. Based on the advice of their tax preparer, the Singletons reported, however, that they were ineligible to receive a credit for the full amount, and were entitled to a credit of only $423.[1]

Accordingly, the Singletons reported that their total 1987 tax liability was $160,370 ($160,793 tax liability - $423 general business credit). Because they had made total payments of $190,661, they reported that they were entitled to a refund of the $30,291 difference.

_____

[1] A general business credit is limited to the smaller of three figures: (1) the amount of the carryforward, (2) the excess of the taxpayer's net income tax liability over the taxpayer's tentative minimum tax, and (3) the excess of the taxpayer's net income tax liability over "25 percent of the taxpayer's net regular tax liability as exceeds $25,000." 26 U.S.C. § 38(c)(1).

On October 3, 1988, the Internal Revenue Service ("IRS") sent the Singletons a Correction Notice stating: "[A]n error was made when your general business credit was figured on your form 3800."[2] (J.A. 76). Under the IRS' calculations, the Singletons were entitled to a business credit carryforward of $92,429, not merely $423. Accordingly, the IRS refunded to the Singletons an additional $92,006 ($92,429 credit due - $423 credit already taken). [3]

Nearly three years later, on January 28, 1991, the IRS advised the Singletons that it had increased their tax liability for 1987 by $1,173, based on changes in the laws governing the alternative minimum tax. (J.A. 77). Shortly thereafter, on February 11, 1991, the IRS again wrote the Singletons, stating that: "As a result of recent changes in the tax laws, rulings, or regulations, we changed your tax return for the above tax year to correct your minimum tax or alternative minimum tax and other credits." (J.A. 79). This second letter stated that the Singletons' tax liability for 1987 had been recalculated, increasing it by $93,179 plus statutory interest of $34,012.96.[4] The IRS assessed the $127,191.96 total and demanded immediate payment. No"notice of deficiency" was issued by the IRS.

Having no notice of deficiency, the Singletons were unable to challenge this assessment in United States Tax Court. [5] Consequently, to forestall lien foreclosure on their primary residence, the Singletons sold their beach house, turning the proceeds over to the IRS, and entered into an installment agreement to pay $1,750 per month. The

_____

[2] According to the Declaration of Doris Beard, a Lead Tax Examiner of the Reject Unit in the Error Correction/Reject Section of the IRS, Correction Notices are issued when the IRS believes that the taxpayer has made a mathematical or clerical error on his or her return. (J.A. 161-62). The IRS then assesses the amount due. Id.
[3] The $92,006 refund was in addition to the anticipated $30,291 refund, resulting in a total refund of $122,297. (J.A. 76).
[4] Unlike the first letter, which referred to specific Code provisions and contained a thorough explanation of the changes in the tax laws (as well as an apology), the second letter was terse, vague, and contained no Code references whatsoever.
[5] A notice of deficiency is a prerequisite to filing suit in Tax Court to challenge an assessment. 26 U.S.C. § 6213(a).

Singletons paid the entire $93,179 principal balance, but only paid a fraction of the accrued interest ($58,965.19 as of September 11, 1995).

Having avoided foreclosure, the Singletons then sought a refund from the IRS on August 31, 1992. When none was forthcoming, they filed this action. The government filed a counterclaim for the unpaid statutory interest under 26 U.S.C. § 6601. Both parties moved for partial summary judgment as to liability.

In their summary judgment motion, the Singletons contended that the 1991 assessment was unlawful because the IRS failed to follow required statutory procedures. Under § 6213(a), the IRS is prohibited from assessing a deficiency unless it first issues a notice of deficiency to the taxpayer. After issuing the notice, the IRS must wait 90 days before assessing and collecting the amount due, to give the taxpayer an opportunity to litigate the deficiency in Tax Court. Id.

The government, in response, argued that the procedures outlined in § 6213(a) were not required here. It contended that the Singletons' 1987 return was correct, and that IRS mistakes resulted in an erroneous refund to the Singletons in 1988. When the IRS realized its mistake, in 1991, the government argued, it properly made a "supplemental assessment," pursuant to 26 U.S.C. § 6204, for the full amount of tax reported on the Singletons' original return. Under § 6204, the government asserted, the IRS may make a supplemental assessment, "whenever it is ascertained that any assessment is imperfect or incomplete in any material respect." Id. In addition, the government claimed that the IRS was not required to issue a notice of deficiency prior to making a supplemental assessment, because the Singletons' erroneous refund was of a type exempted from such procedural requirements.

In support of this argument, the government contended that the procedures followed in making a supplemental assessment depend upon whether the refund is a "rebate refund" or a "non-rebate refund."

A rebate refund, the government argued, occurs when the IRS determines that a taxpayer's liability under the Code is less than the amount reported on his or her return. 26 U.S.C.§ 6211(b)(2). In other

4

words, it occurs when the IRS reviews a taxpayer's return, determines that the taxpayer overcalculated his or her tax liability, and then refunds the overpayment. Id. If the IRS were to later recalculate and determine that it had misapplied the tax rules and regulations, it could collect the erroneous rebate refund by making a supplemental assessment.**6** 26 U.S.C. § 6204. This supplemental assessment, the government conceded, should be preceded by a "notice of deficiency." 26 U.S.C. § 6213(a).

The government contended, however, that there is a second category of refunds which is excepted from this notice of deficiency requirement. These so-called "non-rebate" refunds are returned to the taxpayer not because of a determination that no tax is owed, but because of a mistake, such as a computer error. See O'Bryant, 49 F.3d at 342. For example, a non-rebate refund occurs when the IRS accidentally credits a taxpayer's payment twice. Id.

In this case, the government argued that the $92,006 refund issued to the Singletons was a non-rebate refund. As a result, it contended, the IRS was entitled to make a corrective, supplemental assessment in 1991 to reclaim the erroneous refund -- without first issuing a notice of deficiency. The government explained that no notice was required because the erroneous refund was issued by mistake, and the Singletons' tax liability, as reported on their 1987 return, never changed.**7**

Alternatively, the government argued to the district court that the

_____

**6 See Bilzerian v. United States** , 86 F.3d 1067, 1069 (11th Cir. 1996); Clark v. United States, 63 F.3d 83, 88 (1st Cir. 1995); O'Bryant v. United States, 49 F.3d 340, 346 (7th Cir. 1995). Because the taxpayer's initial payments extinguished the original assessment, the IRS would be required to make a second assessment for any subsequent liability. Id.; Wilkes v. United States, 946 F.2d 1143 (5th Cir. 1991); 26 U.S.C. § 6213(a).

**7** Before the district court, the government conceded that it was not entitled to collect the $1,173 portion of the 1991 assessment. Because this amount was based on a substantive recalculation of the Singletons' alternative minimum tax, the government conceded that its failure to issue a notice of deficiency was improper.

5

Singletons had "waived" their right to a refund when they signed the installment agreement, effectively admitting that they were entitled to a business credit of only $423 (not $92,429).

The district court rejected the government's supplemental assessment argument, holding that the IRS was required to issue a notice of deficiency before it lawfully could assess and collect the $92,006 liability. The court accepted the government's alternative argument, however, that the Singletons' installment agreement constituted a waiver of their right to a refund. Accordingly, the court granted judgment for the government as to the $92,006 tax debt and the $58,965.19 unpaid statutory interest. The Singletons then filed this appeal.[8]

II.

The issue on appeal is whether the IRS was required by statute to issue a notice of deficiency to the Singletons prior to making its 1991 supplemental assessment.[9]

On appeal, the Singletons reiterate the argument they made to the district court: that the IRS must, before assessing and collecting this tax liability, follow the statutory procedures in 26 U.S.C. § 6213(a), including first issuing a notice of deficiency. In response, the government concedes that the IRS did not follow these procedures. It contends, however, that the IRS was not required to do so because the 1991 assessment was merely a supplemental assessment to reclaim an erroneous non-rebate refund. In support of this argument, the government re-asserts the purported distinction between rebate and non-rebate refunds which it argued to the district court.

In addition, the government explains that no notice of deficiency was required because, by definition, no deficiency existed. A "defi-

_____

[8] The district court's grant of summary judgment is subject to review de novo. Riley v. Dorton, 93 F.3d 113, 115 (4th Cir. 1996).
[9] The government has abandoned its waiver argument on which the district court based its opinion, believing the reasoning to be incorrect. Accordingly, the Court will not address the waiver issue.

ciency" can be defined loosely as the amount by which a taxpayer's liability exceeds the tax reported on his or her return.**10**

Technically, the government argues, the Singletons had no deficiency. Their 1987 tax return reported liability of $160,370, the same amount assessed by the IRS ($68,364 in 1988 + $92,006 in 1991). There were no "rebates," the government contends, because the Singletons' $92,006 refund was of the non-rebate variety.**11** As a result, the government argues, the refund should not be included in the deficiency calculation, resulting in a deficiency of zero. Because no deficiency exists, the government argues, no notice of deficiency needed to be issued. The Court rejects this argument.

A.

IRS procedures for assessing taxes have been succinctly summarized by the Seventh Circuit as follows:

> Typically, when the IRS receives a tax return it evaluates

_____

**10** Specifically, a deficiency is the amount by which the liability exceeds the excess of:

> (1) the sum of:
>
>  (a) the tax reported, and
>
>  (b) any prior assessments,
>
> (2) less any rebates.

26 U.S.C. § 6211(a).

**11** As discussed above, a rebate refund is issued when the IRS determines that the tax imposed is less than the tax reported. Specifically, the term "rebate" is defined as "an abatement, credit, refund, or other repayment," made on the ground that the tax imposed was less than:

> (1) the sum of:
>
>  (a) the tax reported, and
>
>  (b) any prior assessments,
>
> (2) less any prior rebates.

26 U.S.C. § 6211(b)(1).

7

the return for accuracy. If it finds the return satisfactory, it enters an assessment for the amount of tax that the taxpayer has calculated to be owing. If the IRS disagrees with the taxpayer's determination of his tax liability, it can enter a different assessment, but only after it issues a notice of deficiency to the taxpayer and gives him 90 days to challenge its calculations in the Tax Court. The IRS has three years from the date the refund is filed to make an assessment of liability. 26 U.S.C. §§ 6201, 6212, 6213.

Once it makes an assessment the IRS generally has 60 days to issue a notice and demand for payment to the taxpayer, and ten years to collect the assessed amount. 26 U.S.C. §§ 6303, 6502(a)(1). Collection may be made through administrative methods (including federal liens, summonses, and levies) or judicial methods (suits to foreclose liens or reduce assessments to judgment). 26 U.S.C. #8E8E # 6321-6326, 7403. If the IRS discovers that "any assessment is imperfect or incomplete in any material respect," it may correct the problem by making a supplemental assessment within three years of the filing of the return. 26 U.S.C. § 6204.

O'Bryant v. United States, 49 F.3d 340, 342 (7th Cir. 1995). See also Clark v. United States, 63 F.3d 83, 85 n. 1 (1st Cir. 1995).

If, on the other hand, the taxpayer's reported liability is less than the amount paid to the Treasury, the IRS will issue a refund. O'Bryant, 49 F.3d at 342. Occasionally, the IRS makes mistakes during this process, by miscalculating the refund or by issuing the refund check twice. Id. In these cases, the IRS can reclaim the erroneous refund in one of two ways. Id. First, the IRS can bring an erroneous refund suit under 26 U.S.C. § 7405, within two years after the refund was made. Id. at 342-43. Second, the IRS can pursue the "post-collection assessment procedures" outlined above (§ 6213 notice of deficiency and demand for payment, followed by judicial or administrative action). Id. at 343. Here, the IRS chose the latter course of action, albeit without complying with the procedural requirements.[12]

_____

[12] Presumably, the IRS did not file an erroneous refund suit here because the two-year statute of limitations imposed by 26 U.S.C. § 6532(b) had expired when the IRS realized its error.

8

Several circuit courts have rejected IRS attempts to reclaim erroneous refunds through such procedural shortcuts. See, e.g., Bilzerian, 86 F.3d 1067; Clark, 63 F.3d 83; O'Bryant , 49 F.3d 340. In each of these cases, the IRS mistakenly had issued a refund to the taxpayer, which the IRS later sought to collect through summary procedures. Id. In each case, the government argued that, because the erroneous refunds were of the non-rebate variety, the IRS was not required to make a new assessment or follow deficiency procedures before collecting the money.

Each court rejected this argument. Declining to accept the government's proposed distinction between the treatment of rebate and non-rebate refunds, our sister circuits uniformly held that the IRS had acted improperly by failing to follow the statutory methods for reclaiming an erroneous refund. Bilzerian, 86 F.3d at 1069 (holding that "once a tax liability is paid, no erroneous refund -- whether rebate or non-rebate -- can revive it"); Clark, 63 F.3d at 87-88; O'Bryant, 49 F.3d at 346-47; Wilkes, 946 F.2d at 1152.

In those cases, however, the courts criticized the IRS' failure to issue a supplemental assessment. Here, the IRS did issue a supplemental assessment to the Singletons before attempting to collect the erroneous refund. Thus, unlike these previous opinions, the Court must consider an additional wrinkle: Before issuing the 1991 supplemental assessment, was the IRS required to follow the assessment procedures in 26 U.S.C. § 6213(a), notably sending the Singletons a notice of deficiency? The Court concludes that a notice of deficiency was required and that, in its absence, the assessment was invalid.

B.

Section 6204, which authorizes the IRS to make supplemental assessments, explicitly incorporates the assessment procedures described in § 6213.[13] This latter provision states:

> [N]o assessment of a deficiency . . . shall be made, begun, or prosecuted until such notice has been mailed to the tax-

_____

[13] "For restrictions on assessment of deficiency in income, estate, gift, and certain excise taxes, see § 6213." 26 U.S.C. § 6204(b).

payer, nor until the expiration of such 90-day [ ] period . . . nor, if a petition has been filed with the Tax Court, until the decision of the Tax Court has become final.

26 U.S.C. § 6213(a). In other words, sections 6204(b) and 6213(a) prohibit the IRS from issuing a supplemental assessment without first issuing a notice of deficiency and giving the taxpayer an opportunity to contest the assessment in Tax Court.

The Court finds no applicable exception to these procedural requirements. Section 6213(a) applies to all assessments; it does not distinguish between assessments intended to reclaim rebate refunds versus those intended to reclaim non-rebate refunds.

1.

Section 6213(b) describes the sole statutory exceptions to these assessment procedures. Section 6213(b)(1) specifies that, in the case of "mathematical or clerical errors," no notice of deficiency is required before the IRS assesses the tax due.[14] This category is limited, however, to errors appearing on the taxpayer's return. Id.

When a taxpayer makes such "mathematical or clerical errors," the IRS must send a notice to the taxpayer "set[ting] forth the error alleged and an explanation thereof." 26 U.S.C.§ 6213(b)(1). According to § 6213(b)(1), this notice does not constitute a notice of deficiency and does not entitle the taxpayer to file a petition with the Tax Court. Denying the taxpayer access to the Tax Court in this circumstance is understandable, however, because any increase in tax due would result from the taxpayer's own computational error rather than from a substantive IRS calculation. As a result, access to Tax Court is unnecessary.

In the Singletons' case, however, this exception to the assessment procedures is inapplicable. The government does not contend that the Singletons made a "mathematical or clerical" error on their return; in

_____

[14] Section 6213(b)(2) & (3) relate to taxpayer requests to abate an assessment specified in a notice of deficiency;§ 6213(b)(4) permits the IRS to assess one's taxes upon receipt of payment.

10

fact, the government asserts the accuracy of their return as the basis for the IRS' supplemental assessment.

## 2.

According to the government, no notice of deficiency was required in this case because no deficiency existed. This argument is premised on the assumption that the $92,006 refund issued to the Singletons was a non-rebate refund and, therefore, was excluded from the deficiency formula.**15**

The Court disagrees with this analysis. Following our sister circuits, the Court frowns upon the government's attempt to bypass congressionally-mandated procedures in the case of purported non-rebate refunds. See Bilzerian, 86 F.3d at 1069; Clark, 63 F.3d at 87-88; O'Bryant, 49 F.3d at 346-47; Wilkes , 946 F.2d at 1152.

Even assuming, arguendo, that the distinction between rebate and non-rebate refunds is valid, the Court concludes that this case involves a rebate refund. Unlike obvious mistakes such as those in O'Bryant, in which the IRS credited a taxpayer's payment twice and in Clark, in which the IRS applied a tax payment to the wrong year, the Singletons' erroneous refund is not easily classified as a non-rebate refund.

Instead, the Court finds that the changes in the Singletons' tax status were based not on computer or computational errors, as the government contends, but on substantive recalculations of their tax liability. Indeed, in its February 1991 letter to the Singletons, the IRS explicitly stated that their liability had increased due to "recent changes in the tax laws, rulings, or regulations." (J.A. 79). As a result, the Court finds that the IRS recalculated the Singletons' tax liability (albeit erroneously) when it mistakenly permitted the full business credit carryforward in 1988, and the IRS recalculated a second time when it realized this error and sought to collect the erroneous $92,006 refund in 1991. Accordingly, the 1988 refund would be characterized

---

**15** As noted above, a deficiency is defined as the amount by which a taxpayer's liability exceeds the tax reported on the return, less any rebate refunds. 26 U.S.C. § 6211(a).

11

properly as a rebate refund, and would be included in the deficiency calculation.

C.

In sum, the Court finds that the IRS issued a rebate refund to the Singletons in 1988. Because rebate refunds are included in the deficiency formula, the 1988 $92,006 rebate refund resulted in a deficiency of $92,006 when the IRS supplementally assessed the Singletons in 1991. 26 U.S.C. § 6211(a). Accordingly, the IRS was required to issue the Singletons a notice of deficiency for this amount before making a supplementary assessment and collecting the tax due.

Moreover, the Court frowns upon the IRS' attempt to bypass these assessment procedures by characterizing refunds as non-rebate. The requirement that a notice of deficiency be issued to the taxpayer is not a mere technicality. This notice serves as a jurisdictional prerequisite for a taxpayer to challenge an assessment in Tax Court. Taxpayers should not be deprived of their access to the Tax Court because of a mistake by the IRS.

Without a notice of deficiency, the taxpayer's only recourse is to pay the disputed bill and later file for a refund, as the Singletons did here. As illustrated by this case, a subsequent suit in federal court to recover the disputed funds could result in a lengthy delay, while the IRS retains the disputed funds.

Accordingly, the Court holds that the IRS was required to issue a notice of deficiency before making its supplemental assessment in 1991. Because this notice was never sent, the Singletons were deprived of their opportunity to contest the tax due (as well as the mounting interest). In the absence of this vital procedural step, the IRS assessment was invalid.

The judgment of the District Court is hereby

REVERSED.

NIEMEYER, Circuit Judge, dissenting:

The question presented in this case is whether the taxpayer may retain a $92,006 refund made by the IRS in error.

12

The Singletons correctly reported their tax liability for 1987 and requested an appropriate refund. The IRS, however, made a computational error in recording their tax and refunded an additional $92,006 as the result of that error. When the IRS discovered the error over two years later, it sent the taxpayer a supplemental assessment to collect the erroneously refunded money, and the taxpayer and the IRS entered into a payback arrangement. But thereafter, the taxpayer sued the IRS in the district court for the amount of the erroneous refund, claiming that the IRS was not entitled to collect the erroneous refund without first sending them a notice of deficiency, which the IRS did not do, and that it was now too late to correct the procedure, because any further assessment would be beyond the three-year limitation period provided by the Tax Code.

Because I believe the IRS was not required to give notice of deficiency, since no deficiency, as defined by the Code, was involved, I would affirm the IRS's method of proceeding, and for that reason I would affirm the judgment of the district court.

More than two years after the IRS discovered its refund error, it issued a supplemental assessment under I.R.C. § 6204, correcting its error. It then began with efforts to collect from the Singletons the amounts erroneously refunded. The IRS did not issue a notice of deficiency before issuing the supplemental assessment because the tax reported by the taxpayer was never less than that due under the Tax Code and therefore a deficiency as defined by the Tax Code was never involved.

Both parties agree that, in general, the IRS may recover erroneous refunds resulting from erroneous initial assessments in one of two ways. First, the IRS may file suit under I.R.C.§ 7405, which explicitly authorizes suits to recover erroneous refunds. Second, the IRS may make a "supplemental assessment" to correct the original error in the tax assessment, under I.R.C. § 6204(a) (authorizing "supplemental assessment whenever it is ascertained that any assessment is imperfect or incomplete in any material respect"). The IRS may then follow administrative or judicial procedures for collecting the amount due.

In this case, the IRS did not file suit under I.R.C.§ 7405, apparently because it did not discover the erroneous refund within the two-

13

year period after the refund as allowed by the Code. See I.R.C. § 6532(b) (allowing suit under § 7405"only if such suit is begun within two years after the making of such refund"). Instead, the IRS made a "supplemental assessment" under I.R.C.§ 6204. The question before us is whether the IRS correctly followed procedures in making such a "supplemental assessment" without first issuing a notice of deficiency. If it did, the IRS may retain the money that has been collected from the Singletons and may collect the remaining sums not yet paid. And if the IRS was not allowed to omit a notice of deficiency, the Singletons must be awarded the money because no additional assessments may now be made. See I.R.C. § 6204(a) (allowing supplemental assessments "within the period prescribed for assessment"); I.R.C. § 6501 (requiring assessments to be made within three years of filing of return, except as otherwise provided). While the question might appear rather straightforward, it quickly plunges us into the dense, technical definitions of the Internal Revenue Code, which I respectfully suggest the majority has misread.

Section 6204 of the Tax Code, which authorizes supplemental assessments, incorporates as "restrictions on assessment" the provisions of § 6213 (relating to deficiencies). Section 6213, in turn, provides that "no assessment of a deficiency . . . and no levy or proceeding in court for its collection shall be made, begun, or prosecuted until such notice [of deficiency] has been mailed to the taxpayer." I.R.C. § 6213(a). It is on the basis of this section that the majority says that the Tax Code "prohibit[s] the IRS from issuing a supplemental assessment without first issuing a notice of deficiency." Slip op. at 10. To make that conclusion, however, the majority must assume that a deficiency existed, or it simply misreads the statute.

The Tax Code does not prohibit supplemental assessments without a notice of deficiency. It prohibits supplemental assessments of a deficiency without notice of a deficiency. See I.R.C. § 6213(a) ("no assessment of a deficiency . . . shall be made" without notice (emphasis added)). In this regard, the majority misreads"Section 6213(a) [to] appl[y] to all assessments." Slip op. at 10. That section, however, reads only to require a notice of deficiency when there is a deficiency at stake. When no deficiency is involved, as is the case before us, then the notice of deficiency is not required. Accordingly, we must turn to

14

whether a deficiency was involved in this case, recognizing that "deficiency" is a specifically defined term under the Code.

Section 6211 defines deficiency as:

> The amount by which the tax imposed by [the Code] exceeds the excess of . . . the amount shown as the tax by the taxpayer upon his return . . . plus . . . the amounts previously assessed (or collected without assessment) as a deficiency over . . . the amount of rebates, as defined in subsection (b)(2) made.

I.R.C. § 6211(a). In other words, a deficiency is equal to the Code-imposed tax, minus the taxpayer's calculated amount of tax and prior deficiency assessments, plus prior rebates. Moreover, "rebate" is also specifically defined by the Code as:

> So much of an abatement, credit, refund, or other repayment, as was made on the ground that the tax imposed by [the Code] was less than the excess of the amount specified in subsection (a)(1) over the rebates previously made.

I.R.C. § 6211(b)(2). In other words, a rebate is money sent to the taxpayer because the taxpayer's calculation (plus prior deficiency assessments) was greater than the Tax Code liability (minus past rebates). Notably, a "rebate" does not include all of a refund, but only so much of it as is made "on the ground that" the taxpayer overestimated his tax liability (when past deficiencies and rebates are accounted for). In this limitation on the definition inheres the distinction between "rebate" and "non-rebate" refunds.

At the risk of oversimplification, a deficiency, as defined by the Tax Code, is a measurement defined in respect to Tax Code liability. Thus, if the Tax Code imposes liability for an amount greater than reported by the taxpayer, the difference, as adjusted by any rebates, is the deficiency. And a rebate is likewise a Tax Code-liability measurement defined to be the difference between a tax payment made to a taxpayer and the Tax Code liability.

15

In this case, the Tax Code liability of the Singletons was the same as they reported on their tax return, and therefore there was neither a deficiency nor a rebate involved. The IRS refunded $92,006, not because the taxpayer calculated his liability to be greater than the Tax Code imposed it, but because the IRS made a computational error. The IRS's refund of $92,006 was thus a "non-rebate refund" for which no notice of deficiency is required. The limitation imposed by I.R.C. § 6213(a), requiring a notice of deficiency, applies only when there is an "assessment of a deficiency." (Emphasis added).

For these reasons, I respectfully submit that the IRS's position reflects, not an "attempt to bypass congressionally-mandated procedures," see slip op. at 11, but a recognition that Congress mandated a notice of deficiency only with respect to the assessment of a deficiency.

While it would have been much simpler if the IRS had discovered its error within the two years and therefore been able to file suit under I.R.C. § 7405, the fact that it discovered the error within three years entitled it to file a supplemental assessment without giving a notice of deficiency because a deficiency was not involved. Accordingly, following its assessment, it was entitled to collect the erroneously refunded money.

For these reasons, I would affirm the judgment of the district court.

16