# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
            *Plaintiff-Appellee,*

v.

CRYSTAL FOSTER; ROBERT FOSTER,
            *Defendants-Appellants,*

and

No. 02-1086

REBECCA CARPENTER; PAMELA MIFFIN;
1ST ADVANTAGE FEDERAL CREDIT
UNION; WACHOVIA BANK, N.A.;
MERCEDES-BENZ CREDIT
CORPORATION,

            *Defendants.*

Appeal from the United States District Court
for the Eastern District of Virginia, at Richmond.
Richard L. Williams, Senior District Judge.
(CA-01-783-3)

Argued: October 31, 2002

Decided: December 3, 2002

Before WILKINSON, Chief Judge, and LUTTIG and
MOTZ, Circuit Judges.

---

Affirmed by unpublished per curiam opinion.

---

## COUNSEL

**ARGUED:** David Lassiter, Jr., JEFFERSON & LASSITER, Rich-
mond, Virginia, for Appellants. Gretchen M. Wolfinger, Tax Divi-

sion, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee. **ON BRIEF:** Eileen J. O'Connor, Assistant Attorney General, Gilbert S. Rothenberg, Paul J. McNulty, United States Attorney, Tax Division, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

## OPINION

PER CURIAM:

The Internal Revenue Service ("IRS") issued Crystal Foster a sizeable refund in the year 2001. Shortly thereafter, the IRS concluded that the refund was erroneous and brought suit in federal district court to recover the refunded amount. The district court held that the refund was in error and ordered Crystal Foster, and others who it found had received portions of the refund from Crystal, to return the funds. Crystal, and her father Robert, appealed. Finding no error in the rulings of the district court, we affirm.

I.

The testimony and evidence at the preliminary injunction hearing and at the bench trial established the following. Around July of 2001, Crystal Foster filed her income tax return for tax year 2000. Crystal's tax return reflected total income of $3429. On her return, Crystal also claimed that a $500,000 tax payment had been made on her behalf as described on her Form 2439. Her Form 2439 showed $500,000 in undistributed long-term capital gains from a registered investment company (RIC) or real estate investment company trust (REIT), although the RIC/REIT was not identified on the form. J.A. 140. Crystal's return stated that the $500,000 should be refunded to her.

The IRS sent a letter to Crystal requesting the name of the RIC/REIT. The letter was returned to the IRS with a notation on the

bottom identifying the RIC as "US Department of Treasury, Black Capital Investments." J.A. 137. Subsequently, on October 29, 2001, the IRS issued a United States Treasury check to Crystal in the amount of the requested refund of $500,000, plus $7534.95 in interest. Crystal received the check and proceeded to disburse portions of it to several others, including $100,000 to her father Robert Foster.

Upon further investigation, the IRS realized that "Black Capital Investments" did not exist under the auspices of the United States Treasury, or otherwise. Neither had any RIC or REIT withheld $500,000 and paid that amount to the IRS on behalf of Crystal. Realizing its mistake, on November 20, 2001, the United States filed a complaint in federal district court seeking recovery of the funds from both Crystal and Robert, among others. The United States obtained a preliminary injunction to prevent the Fosters from dissipating the proceeds of the refund. The Fosters filed a motion to dismiss for lack of jurisdiction, which the district court denied. The district court also denied the Fosters' motion for recusal. After a bench trial, the district court entered judgment in favor of the United States and ordered that the funds be returned. The Fosters appealed.

II.

On appeal, the Fosters argue that the district court erred in denying their motion to dismiss. Though the Fosters never specified the federal rule on which they were relying, their motion to dismiss was apparently one for lack of subject matter jurisdiction. We review *de novo* the denial of a motion to dismiss under Rule 12(b)(1). *See Puryear* v. *County of Roanoke*, 214 F.3d 514, 517 (4th Cir. 2000).

The Fosters moved to dismiss on the ground that the United States failed to send them a notice of deficiency before commencing suit. This failure allegedly deprived the Fosters of the opportunity to challenge the assessment in Tax Court. The United States argues that it had a choice of mechanisms by which to recover the erroneous refund; it could either bring suit in district court pursuant to 26 U.S.C. § 7405, as it did here, or it could issue a notice of deficiency and pursue administrative collection procedures.

The Fosters' argument is wholly without merit. Section 7405 states, in relevant part:

(a) Refunds after limitation period.—Any portion of a tax imposed by this title, refund of which is erroneously made, within the meaning of section 6514, may be recovered by civil action brought in the name of the United States.

(b) Refunds otherwise erroneous.—Any portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States.

26 U.S.C. § 7405. On its face, the statute clearly allows for the collection of an erroneous refund in district court. The only restriction on the ability of the United States to bring such a suit is the statute of limitations provided by section 7405(d), which is generally two years. *See* 26 U.S.C. § 6532(b). In *Singleton* v. *United States*, 128 F.3d 833 (4th Cir. 1997), we noted that the government can elect to collect in district court an erroneous refund through section 7405, provided it does so within the specified limitations period, *or* it can issue a notice of deficiency and pursue administrative collection procedures. *Id.* at 837; *see also O'Bryant* v. *United States*, 49 F.3d 340, 342-43 (7th Cir. 1995) ("There are two ways in which the IRS can recover an erroneous payment to a taxpayer. It can either file suit under § 7405, the erroneous refund suit provision, or pursue the post-assessment collection procedures . . . (§ 6303 notice and demand, followed by judicial and/or administrative action)." (footnote omitted)); *Rushlight Automatic Sprinkler Co.* v. *United States*, 294 F.2d 572, 573-74 (9th Cir. 1961) (examining the predecessor statute to section 7405 and concluding that the government was entitled to maintain an action under that statute for recovery of an erroneous refund without first following the deficiency notice procedures). In this case, the United States opted to proceed under section 7405, and thus no notice of deficiency was required. Because the United States commenced suit well within the two year limitations period, the district court had subject matter jurisdiction over the case.

## III.

The Fosters also challenge the sufficiency of the evidence at trial. In order for the United States to prevail in its section 7405 action

against Crystal Foster, it had to establish: 1) that a refund of a sum certain was made, 2) that the recovery action was timely, and 3) that Crystal Foster was not entitled to the refund. *See*, *e.g.*, *United States* v. *Commercial Nat'l Bank of Peoria*, 874 F.2d 1165, 1169 (7th Cir. 1989). In addition, the United States was obliged to show that Robert was a transferee of Crystal in the amount of $100,000. This court may only set aside the district court's factual findings if they are clearly erroneous. Fed. R. Civ. P. 52(a).

The Fosters do not challenge the district court's findings that the refund suit was timely, that the refund was erroneous, and that Robert Foster was a transferee of the alleged amount. They contend only that there was insufficient admissible evidence on which the court could find that Crystal received and cashed the refund check.

The Fosters' argument is once again without merit. The United States showed that the IRS issued an erroneous refund to Crystal Foster. *See*, *e.g.*, J.A. 117-18 ("Q: And is there anything in those exhibits that shows that a refund was sent? A: Yes. In exhibit 2 there is an indication on 10 A 2001 that a hold was reversed and refund issued on 10/29/02 in the amount of $507,534.95. Q: Should that refund have been issued? A: No."). The United States adduced circumstantial evidence that Crystal Foster received and cashed the refund check. *See* J.A. 120 ("Q: But do you know if Mrs. Foster actually physically received a refund check from you? A: Refund was issued in her name, and it was cashed."). In addition, Crystal Foster's attorney, Mr. Lassiter, admitted the she had received the money. At the preliminary injunction hearing, Mr. Lassiter said that "she received the check for $500,000." J.A. 30; *see also* J.A. 29 (Lassiter: "They got the check and simply didn't leave it in the bank to sit. . . ."). The United States' case was essentially uncontroverted, as the Fosters chose not to put on any probative evidence or witnesses at the preliminary injunction hearing or at the bench trial. Given the evidence presented, it cannot be said that the district court's factual conclusions were clearly erroneous.*

---

*The Fosters also appeal the district court's denial of their motion for recusal. The Fosters do not assert any extrajudicial source of bias, and the remarks of the district court fall well short of displaying a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky* v. *United States*, 510 U.S. 540, 555 (1994). We accordingly affirm the district court's denial of their motion.

The judgment of the district court is affirmed.

*AFFIRMED*