# United States Tax Court

163 T.C. No. 2

CATHERINE L. LAROSA,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 10164-20.                                    Filed July 17, 2024.

————

R made an erroneous refund of interest to P–W and H. After prevailing in an erroneous refund suit, R attempted to collect the liability. P–W requested innocent spouse relief under I.R.C. § 6015(f), i.e., equitable relief. R denied relief, arguing that a liability arising from an erroneous refund of interest is not eligible for relief under I.R.C. § 6015(f). P–W filed a Petition challenging R's denial of relief. R moved to dismiss for lack of jurisdiction, arguing that an erroneous refund of interest is not eligible for innocent spouse relief. P–W objects.

*Held*: In the case of an individual who requests equitable relief under I.R.C. § 6015(f), the filing of a timely petition confers jurisdiction on the Court regardless of the merits of the underlying claim for relief.

*Held, further*, innocent spouse relief under I.R.C. § 6015(f) is available only for unpaid taxes or deficiencies.

*Held, further*, an erroneous refund consisting only of interest does not give rise to an unpaid tax or a deficiency.

*Held, further*, P–W is not eligible for relief under I.R.C. § 6015(f).

————

**Served 07/17/24**

*Caroline D. Ciraolo*, for petitioner.

*Jeffrey E. Gold* and *Deborah Aloof*, for respondent.

OPINION

BUCH, *Judge*: The Commissioner issued Catherine and Dominick LaRosa an erroneous refund consisting of only statutory interest for 1981 and 1982 (years in issue). Following protracted litigation, the Commissioner sought to collect that erroneous refund from the LaRosas. Mrs. LaRosa submitted a request for innocent spouse relief under section 6015(f).[1] The Commissioner did not process her request because he determined that there was no unpaid tax or deficiency from which to grant relief. Mrs. LaRosa filed a Petition seeking review of the Commissioner's determination.

Pending before the Court is the Commissioner's Motion to Dismiss for Lack of Jurisdiction in which he asserts that Mrs. LaRosa is not eligible for relief under section 6015(f) because there is no unpaid tax or deficiency for the years in issue. Section 6015(f) authorizes the Commissioner to provide equitable relief to a requesting spouse for any unpaid tax or deficiency. Generally, once a tax liability is paid in full it is extinguished, although a tax liability can be revived by an erroneous rebate refund. An erroneous refund is a rebate if it is related to a recalculation of a tax liability.

Mrs. LaRosa does not have an unpaid tax or deficiency that is eligible for relief under section 6015(f). The LaRosas satisfied their tax liabilities for the years in issue, and the erroneous refund paid to them consisted solely of interest. Because the erroneous refund issued to the LaRosas did not involve a recalculation of their tax liabilities, the refund was not a rebate and did not give rise to or otherwise revive a tax liability. As a result, Mrs. LaRosa is not eligible for relief under section 6015(f) because there is no unpaid tax or deficiency for the years in issue.

---

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the *Code of Federal Regulations*, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. All monetary amounts are shown in U.S. dollars and rounded to the nearest dollar.

*Background*

The LaRosas have a long history of interactions with the Commissioner, and this proceeding appears to be the latest. On December 2, 1985, Mr. LaRosa, his brother Joseph LaRosa, and their company International Fuel Co., Inc., were found guilty of tax fraud by the State of Maryland for tax years 1981, 1982, and 1983.[2] The day after the verdict in the State of Maryland case, the Commissioner made a jeopardy assessment of federal tax against the LaRosas for 1981, 1982, and 1983. The Commissioner also levied on their assets. Those assets were subsequently placed in escrow pending the determination of the LaRosas' federal tax liabilities.

On November 7, 1990, the Tax Court entered a stipulated decision giving effect to a settlement reached between the Commissioner and the LaRosas. The agreement stated that the LaRosas underpaid their tax for 1981, 1982, and 1983. The total underpayment, including interest and penalties, was $9,744,587. The parties also agreed that the LaRosas overpaid their tax for 1984 and 1985, though this was not stated in the settlement agreement. The total overpayment, including interest, was $6,120,204. The LaRosas paid the difference between the overpayment and underpayment to the Commissioner. Although the LaRosas agreed to pay the net amount that had been due, they reserved the right to further appeal or contest the liability.

After paying the liability, the LaRosas filed a refund claim with the Commissioner, asserting that they were owed a refund of interest they had overpaid.[3] The Commissioner initially denied the claim. But after hearing from the LaRosas' congressional representative, the Commissioner issued a refund. The refund consisted of section 6601 interest (interest on underpayments) and section 6611 interest (interest on overpayments) for the years in issue, after taking into account the timing of the various underpayments and overpayments, the jeopardy assessment, and the escrow. *See* I.R.C. §§ 6601(a), 6611(a).

---

[2] The conviction was later pardoned by William Schaefer, the governor of Maryland from 1987 to 1995.

[3] The LaRosas argued that they were due a refund for overpaid interest, because the interest should not have accrued on the unpaid tax liability after the date of the jeopardy assessment.

In 1996 the Department of Justice (DOJ), on behalf of the Commissioner,[4] brought suit pursuant to section 7405 in federal district court to recover the refund issued to the LaRosas, arguing that the refund was erroneous. *See United States v. LaRosa*, 993 F. Supp. 907 (D. Md. 1997), *aff'd per curiam*, 155 F.3d 562 (4th Cir. 1998) (unpublished table decision). The district court agreed, holding that the LaRosas were not entitled to the refund they had received and ordering them to repay it. *LaRosa*, 993 F. Supp. at 918. The LaRosas appealed, and the Court of Appeals for the Fourth Circuit affirmed. *LaRosa*, 155 F.3d 562.

Following the district court's decision, an abstract of judgment was filed in Montgomery County, creating a lien on all of the LaRosas' real property. In 2017, the DOJ moved to reopen the case and renew the judgment lien on the LaRosas' real property. *See United States v. LaRosa*, 120 A.F.T.R.2d (RIA) 2017-6078, at 2017-6078 (D. Md. 2017). The district court granted the motion and renewed the judgment lien. *Id.* at 2017-6079. On October 31, 2019, the DOJ filed an action to foreclose on the judgment lien. Mrs. LaRosa moved to stay that proceeding until her claim for innocent spouse relief was resolved. *See United States v. LaRosa*, 125 A.F.T.R.2d (RIA) 2020-1800, at 2020-1800 (D. Md. 2020). The district court granted her motion. *Id.* at 2020-1800, 2020-1802.

On January 10, 2020, Mrs. LaRosa submitted to the Commissioner Form 8857, Request for Innocent Spouse Relief, seeking relief pursuant to section 6015(f) for, among other things, the liabilities for the years in issue.[5] The Commissioner responded to the request on January 24, 2020, stating that he could not process her Form 8857 "because [his] records show no amount is currently owed and no additional assessments for tax years 1981, 1982, and 1986." The letter further stated that "innocent spouse doesn't consider relief for erroneous refunds."

On July 10, 2020, Mrs. LaRosa filed a Petition with the Tax Court seeking a determination of relief from joint and several liability. At the

---

[4] Section 7401 empowers the Secretary of the Treasury and her delegates to authorize "the collection or recovery of taxes, or of any fine, penalty, or forfeiture." On the basis of this authority, the Commissioner referred the recovery action against the LaRosas to the DOJ so that it could bring suit in federal court.

[5] Mrs. LaRosa's request for innocent spouse relief also included 1986, but her Petition seeks relief only with respect to the years in issue.

time the Petition was filed, Mrs. LaRosa lived in Maryland. In response, the Commissioner filed a Motion to Dismiss for Lack of Jurisdiction, arguing that we lack jurisdiction under section 6015(e) to consider Mrs. LaRosa's request for innocent spouse relief relating to an erroneous refund of interest. Mrs. LaRosa objects.

*Discussion*

I.  *Jurisdiction*

Like other federal courts, the Tax Court is a court of limited jurisdiction and can exercise its jurisdiction only to the extent provided by Congress. I.R.C. § 7442; *Judge v. Commissioner*, 88 T.C. 1175, 1180–81 (1987). And of course the Tax Court has jurisdiction to determine whether it has jurisdiction. *Bongam v. Commissioner*, 146 T.C. 52, 54 (2016); *Kluger v. Commissioner*, 83 T.C. 309, 314 (1984). Section 6015(e)(1)(A) confers jurisdiction on this Court to review a petition for innocent spouse relief. It provides:

> (1) In general.—In the case of an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply, or in the case of an individual who requests equitable relief under subsection (f)—
>
>> (A) In general.—In addition to any other remedy provided by law, the individual may petition the Tax Court (and the Tax Court shall have jurisdiction) to determine the appropriate relief available to the individual under this section if such petition is filed—
>>
>>> (i) at any time after the earlier of—
>>>
>>>> (I) the date the Secretary mails, by certified or registered mail to the taxpayer's last known address, notice of the Secretary's final determination of relief available to the individual, or
>>>>
>>>> (II) the date which is 6 months after the date such election is filed or request is made with the Secretary, and
>>>
>>> (ii) not later than the close of the 90th day after the date described in clause (i)(I).

I.R.C. § 6015(e)(1)(A). Paragraph (1) provides two different predicates for our jurisdiction, depending on the kind of relief the taxpayer is seeking. If either predicate is satisfied, we have jurisdiction over an innocent spouse relief claim if the taxpayer files a timely petition. I.R.C. § 6015(e)(1)(A); *Frutiger v. Commissioner*, No. 31153-21, 162 T.C. (Mar. 11, 2024); *Sutherland v. Commissioner*, 155 T.C. 95, 99 (2020). To determine whether we have jurisdiction in this case, we must determine whether either predicate is satisfied and whether the Petition was timely.

The plain text of section 6015(e)(1) specifies two alternative predicates. Under the first of those alternatives, the Court may have jurisdiction over a case involving "an individual against whom a deficiency has been asserted and who elects to have subsection (b) or (c) apply." As is plain from the facts above, and as discussed more fully below, a deficiency has not been asserted against Mrs. LaRosa. We do not have jurisdiction over such a case. But the second predicate for jurisdiction does not require a deficiency. It gives us jurisdiction over a case involving "an individual who requests equitable relief under subsection (f)," i.e., equitable relief. Our jurisdiction in a case involving equitable relief does not require a deficiency to have been asserted against the taxpayer.

The Commissioner is mistaken when he argues that we lack jurisdiction over Mrs. LaRosa's request for innocent spouse relief. Mrs. LaRosa satisfied both requirements for our jurisdiction: She submitted to the Commissioner a request for equitable relief pursuant to section 6015(f), and she timely filed a Petition with the Tax Court. For this purpose, we consider the Commissioner's letter dated January 24, 2020, to be "the Secretary's final determination of relief available to the individual" because it explicitly set forth the Commissioner's final determination that "[i]nnocent spouse doesn't consider relief for erroneous refunds." Ninety days from the date of the Commissioner's determination was April 23, 2020. Although the Petition was not filed until July 10, 2020, the 90-day period within which to file that petition was tolled by I.R.S. Notice 2020-23, 2020-18 I.R.B. 742, which extended the deadline to file the Petition until July 15, 2020.[6] Because Mrs.

---

[6] We need not address whether the Petition was timely under section 6015(e)(1)(A)(i)(II), which authorizes a petition to be filed any time *after* six months *after* the date an innocent spouse relief request is made. The Petition in this case was hand delivered to the Court on July 10, 2020, exactly six months after the request was made on January 10, 2020.

LaRosa submitted a request for equitable relief and filed a timely Petition from the Commissioner's determination with respect to that request, we have jurisdiction over this case.

Our conclusion on the jurisdictional issue resolves the issue presented in the title of the Commissioner's Motion, but it does not resolve the substance of that Motion. The substance of the Commissioner's Motion and Mrs. LaRosa's objection is not whether we have jurisdiction, but whether we should find as a matter of law that Mrs. LaRosa is not eligible for equitable relief under section 6015(f). Thus, we will recharacterize the Commissioner's Motion to Dismiss for Lack of Jurisdiction as a Motion for Summary Judgment, and we now turn to that recharacterized Motion.

## II.   *Summary Judgment Standard*

We may grant summary judgment when there is no genuine dispute as to any material fact and a decision may be rendered as a matter of law. Rule 121(a)(2); *Sundstrand Corp. v. Commissioner*, 98 T.C. 518, 520 (1992), *aff'd*, 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of showing that there is no genuine dispute as to any material fact. *Sundstrand Corp.*, 98 T.C. at 520. When a motion for summary judgment is properly made and supported, an opposing party may not rest on mere allegations or denials. Rule 121(d). Rather, the party's response, by affidavits or declarations, or as otherwise provided in Rule 121, must set forth specific facts showing there is a genuine factual dispute for trial. Rule 121(d). In deciding whether to grant summary judgment, we view the facts and make inferences in the light most favorable to the nonmoving party. *Sundstrand Corp.*, 98 T.C. at 520.

## III.   *Section 6015 Innocent Spouse Relief*

As a general rule, married taxpayers filing joint federal income tax returns are jointly and severally liable for all tax due in connection with those returns. I.R.C. § 6013(d)(3). However, section 6015 provides an exception to this rule. Under section 6015, a spouse may be granted relief from joint and several liability if certain conditions are met.

Section 6015 was enacted on July 22, 1998, as part of the Internal Revenue Service Restructuring and Reform Act of 1998 (RRA), Pub. L. No. 105-206, § 3201, 112 Stat. 685, 734–40. It applies to "any liability for tax arising after the date of the enactment of this Act and any liability for tax arising on or before such date but remaining unpaid as

of such date." RRA § 3201(g), 112 Stat. at 740. Under section 6015, a spouse has three avenues to obtain relief from joint and several liability. Those avenues are: "(1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), or (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f)." *Kraszewska v. Commissioner*, T.C. Memo. 2024-26, at \*6; *see* I.R.C. § 6015(b), (c), (f). This case focuses on equitable relief under subsection (f).

Mrs. LaRosa requested innocent spouse relief under section 6015(f) for liabilities from the years at issue. Section 6015(f) provides:

> (1) In general.—Under procedures prescribed by the Secretary, if—
>> (A) taking into account all the facts and circumstances, it is inequitable to hold the individual liable for *any unpaid tax or any deficiency (or any portion of either)*, and
>> (B) relief is not available to such individual under subsection (b) or (c),
> the Secretary may relieve such individual of such liability.
> (2) Limitation.—A request for equitable relief under this subsection may be made with respect to any portion of any liability that—
>> (A) has not been paid, provided that such request is made before the expiration of the applicable period of limitation under section 6502, or
>> (B) has been paid, provided that such request is made during the period in which the individual could submit a timely claim for refund or credit of such payment.

(Emphasis added.) A taxpayer is entitled to equitable relief under section 6015(f) if, considering all of the facts and circumstances, it would be inequitable to hold the requesting spouse liable for any unpaid tax or deficiency that was unpaid as of July 22, 1998, or that arose after July 22, 1998. *See* Treas. Reg. § 1.6015-4(a). If there is neither an unpaid tax nor an unpaid deficiency, relief is unavailable under section 6015(f). Thus, for Mrs. LaRosa to qualify for innocent spouse relief under section 6015(f), we must first find that there is an unpaid tax or deficiency and then find it inequitable to hold her liable for that unpaid tax or deficiency.

IV.     *The Parties' Arguments*

The parties disagree as to whether Mrs. LaRosa is eligible for innocent spouse relief under section 6015(f). The core of the dispute is whether the liability at issue, an erroneous refund of interest, constitutes an unpaid tax or deficiency as required by section 6015(f). The Commissioner argues that Mrs. LaRosa does not qualify for innocent spouse relief under section 6015(f) because an erroneous refund of interest is not an unpaid tax or deficiency. Thus, there is no *unpaid tax* or deficiency for the years in issue. Mrs. LaRosa disagrees, arguing that the erroneous refund should be considered an unpaid tax. Specifically, she argues that the erroneous refund constitutes an unpaid tax because the refund suit filed pursuant to section 7405 was an action for the recovery of a tax. Additionally, Mrs. LaRosa argues that the erroneous refund constitutes an unpaid tax or deficiency because it was a rebate refund that could have been recovered through deficiency procedures.

V.     *Whether the Erroneous Refund Is an Unpaid Tax or Deficiency*

To determine whether the erroneous refund constitutes an unpaid tax or deficiency, we must address two separate arguments put forth by the parties. We must decide whether the erroneous refund suit filed pursuant to section 7405 gave rise to an unpaid tax for the years in issue. And relatedly, we must decide whether the erroneous refund was a rebate refund that revived a tax liability for the years in issue.

A.     *Whether the Erroneous Refund Created a Tax Liability*

Section 7405(b) provides that "[a]ny portion of a tax imposed by this title which has been erroneously refunded (if such refund would not be considered as erroneous under section 6514) may be recovered by civil action brought in the name of the United States." An erroneous refund suit was brought against the LaRosas under section 7405(b). The erroneous refund consisted of interest miscalculated under sections 6601 and 6611. Before the refund suit was brought, the LaRosas had fully paid their tax liabilities for the years in issue. Mrs. LaRosa argues that because section 7405 authorizes a suit to recover tax and the erroneous refund is made up of statutory interest that is to be treated in the same manner as tax, the erroneous refund resulted in an unpaid tax liability. Specifically, she contends that "[h]aving invoked the District Court's jurisdiction to collect a refund of 'tax' and having obtained a judgment on November 7, 1997 pursuant to such invocation, the

government cannot reasonably take the position . . . that the same unpaid judgment is a claim for something other than tax."

Mrs. LaRosa's reliance on the section 7405(b) suit is misplaced. Section 7405(b) provides an avenue to recover an erroneously refunded tax. But the mere fact that the Commissioner prevails in an erroneous refund suit does not give rise to an unpaid tax. Courts have held that once a tax liability is paid in full, that tax liability is extinguished unless it is revived by an erroneous *rebate* refund. *See Greer v. Commissioner*, 557 F.3d 688, 691 (6th Cir. 2009), *aff'g* T.C. Memo. 2007-119. *But see Bilzerian v. United States*, 86 F.3d 1067, 1069 (11th Cir. 1996) (per curiam). And while the government can recover an erroneous rebate refund by filing suit under section 7405(b), it can also recover through an erroneous refund suit erroneous nonrebate refunds, which are not considered tax. *Acme Steel Co. v. Commissioner*, T.C. Memo. 2003-118, 85 T.C.M. (CCH) 1208, 1216. Thus, determining whether an erroneous refund gives rise to an unpaid tax turns on whether the erroneous refund is a rebate or nonrebate refund.

B.     *Whether the Erroneous Refund Was a Rebate Refund*

1.     *Rebate vs. Nonrebate Refunds*

The Internal Revenue Code recognizes two types of refunds: rebate and nonrebate. *YRC Reg'l Transp., Inc. & Subs. v. Commissioner*, T.C. Memo. 2014-112, at \*5; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216. "Rebate refunds are issued on the basis of a substantive recalculation of a taxpayer's tax liability, e.g., the amount of tax due is less than the tax shown on the return. If the recalculation of tax liability is correct, the taxpayer may, of course, retain the refund." *Acme Steel Co*, 85 T.C.M. (CCH) at 1216 (citations omitted). However if it is incorrect, then the Commissioner may recover the erroneous rebate refund. *Id.* In contrast to a substantive recalculation of tax, nonrebate refunds "are issued to taxpayers because of clerical or computer errors, and they bear no relation to a recalculation of tax liability. . . . Examples of nonrebate refunds are refunds issued because the Commissioner credited a taxpayer's payment twice or the Commissioner applied a payment to the wrong tax year." *Id.* (citations omitted).

There are two ways the Commissioner may recover an erroneous refund: by filing an erroneous refund suit under section 7405 or by pursuing a supplemental assessment through deficiency procedures. *See generally O'Bryant v. United States*, 49 F.3d 340, 342–43 (7th Cir. 1995).

Erroneous rebate refunds may be recovered by either action. *YRC Reg'l Transp., Inc. & Subs.*, T.C. Memo. 2014-112, at \*6; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216. But erroneous nonrebate refunds can be recovered only by filing suit under section 7405. *YRC Reg'l Transp., Inc. & Subs.*, T.C. Memo. 2014-112, at \*7; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216.

Nonrebate refunds cannot be recovered through the deficiency procedures because they do not meet the definition of deficiency. *YRC Reg'l Transp., Inc. & Subs.*, T.C. Memo. 2014-112, at \*7; *Acme Steel Co.*, 85 T.C.M. (CCH) at 1216. Section 6211(a) defines "deficiency" as

> the amount by which the tax imposed by subtitle A or B, or chapter 41, 42, 43, or 44 exceeds the excess of—
>> (1) the sum of
>>> (A) the amount shown as the tax by the taxpayer upon his return, if a return was made by the taxpayer and an amount was shown as the tax by the taxpayer thereon, plus
>>> (B) the amounts previously assessed (or collected without assessment) as a deficiency, over—
>> (2) the amount of *rebates*, as defined in subsection (b)(2), made.

(Emphasis added.) Under this definition, rebate refunds give rise to a deficiency, while nonrebate refunds do not. I.R.C. § 6211(a), (b)(2). Thus, it follows that rebate refunds are recoverable by deficiency procedures and nonrebate refunds are not. *Id.* In effect, rebate refunds revive a tax liability. *See Greer v. Commissioner*, 557 F.3d at 691; *United States v. Frontone*, 383 F.3d 656, 658–59 (7th Cir. 2004). *But see Bilzerian*, 86 F.3d at 1069. Nonrebate refunds do not.

The Commissioner argues that the erroneous refund made to the LaRosas was a nonrebate refund, and therefore it did not revive the tax liabilities for the years in issue. Specifically, he argues that the refund was not a rebate because "it was issued due to an error in determining the date on which interest accruals ceased on the deficiencies, not on a redetermination of petitioner and Mr. LaRosa's tax liabilities for those years." Mrs. LaRosa argues that the refund was a rebate refund because it was "the product of IRS error in computing the liability for statutory

interest, which . . . is to be treated the same as the tax upon which it accrues." We agree with the Commissioner.

### 2.    *Analysis*

Several cases have drawn the distinction between rebate and nonrebate refunds. A refund is a rebate when it relates to the recalculation of a tax liability. *Singleton v. United States*, 128 F.3d 833 (4th Cir. 1997). In *Singleton*, 128 F.3d at 834, the Commissioner issued the taxpayers a refund based on an error in calculating the amount of general business credit carryforward. Years later, the Commissioner recalculated the liability because of changes in tax laws, assessed the amount, and demanded immediate payment. *Id.* The Commissioner did not issue a notice of deficiency to the taxpayers. *Id.* The Fourth Circuit determined that the refund was a rebate because it was the result of a substantive recalculation of the tax liability and not the result of computer or computational errors. *Id.* at 839. Thus, the Commissioner was required to issue the taxpayers a notice of deficiency before making a supplementary assessment and collecting tax. *Id.* at 838–39. Likewise, in *Thomas v. Commissioner*, T.C. Memo. 2014-118, at *3–4, the Commissioner issued a refund after determining that the taxpayers had overreported the taxable portion of their Social Security benefits. The Commissioner later concluded that the taxpayers had correctly reported their benefits and sought to recover the refund through deficiency procedures. *Id.* at *4–5. We concluded that the refund was a rebate and could be recovered through deficiency procedures, because the refund involved a recalculation of a taxpayer's tax liability. *Id.* at *8.

On the other hand, a refund is not a rebate when it is not related to the recalculation of a tax liability. *O'Bryant*, 49 F.3d 340. In *O'Bryant*, 49 F.3d at 341, the Commissioner issued the taxpayers an unsolicited refund and sought to recover it. The Court of Appeals for the Seventh Circuit determined the refund was not a rebate because the money the taxpayers had as a result of the refund was not the money the "IRS' original assessment contemplated, since that amount was already paid. Rather it [was] a payment the IRS accidentally sent them. They owe[d] it to the government because they [had] been unjustly enriched by it, not because they [had] not paid their taxes." *Id.* at 346.[7] Further, in *YRC*

---

[7] Mrs. LaRosa argues that her case is distinguishable from *O'Bryant* and cases like *O'Bryant* that involve an unsolicited refund. But whether the taxpayer requested the refund is immaterial; the issue is the nature of the refund, i.e., whether it is a refund of tax.

*Reg'l Transp., Inc. & Subs.*, T.C. Memo. 2014-112, at *3, the Commissioner issued two refunds to the taxpayer. The Commissioner sought to recover the second refund through deficiency procedures. *Id.* at *4, *12. While the parties agreed that the first refund was a rebate, they disputed the character of the second refund. *Id.* at *8–9. We found the second refund was not a rebate, and thus not recoverable through deficiency procedures, because the refund was issued because of a clerical error and not a substantive calculation of tax. *Id.* at *10–12. Lastly, in *Lesinski v. Commissioner*, T.C. Memo. 1997-234, 73 T.C.M. (CCH) 2819, the Commissioner issued a notice of deficiency for 1991 after preparing a substitute for return for the taxpayer. The taxpayer later filed a joint return for 1991 that reflected an overpayment. The taxpayer also filed a petition with this Court challenging the determinations in the notice of deficiency. While the case was pending, the Commissioner accepted the taxpayer's joint return for 1991 and issued a refund even though the period of limitations to recover the refund had expired. The Commissioner sought to recapture the erroneous refund by amending his answer. We determined that the Commissioner could not use the deficiency procedures to recover the refund because it was not a rebate because "[t]he refund was not made on the ground that the tax imposed was less than the amount of tax shown." *Id.*, 73 T.C.M. (CCH) at 2820.

Here, the erroneous refund was not a rebate because it did not involve any portion of the LaRosas' underlying tax liabilities for the years in issue. The LaRosas paid their tax liabilities and interest in full for the years in issue. The Commissioner issued a refund consisting solely of section 6601 and section 6611 interest having (erroneously) concluded that the LaRosas had overpaid interest on the underlying tax. The refund did not involve a recalculation of the LaRosas' tax liabilities for the years in issue, but merely corrected a perceived clerical error in computing interest. The LaRosas' underlying tax liabilities were not adjusted, and no portion of their underlying liabilities was refunded. Therefore, the erroneous refund was not a rebate.

Mrs. LaRosa's reliance on the notion that interest is treated in the same manner as tax is misplaced. She asserts that the refund here is

> not the result of a clerical, accounting, or computer error that bears no relation to the LaRosas' tax liability. . . . The refunds issued to the LaRosas were the product of IRS error in computing the liability for statutory interest,

which under IRS § 6601, is to be treated the same as the tax upon which it accrues. Thus the erroneous refund is rebate within the meaning of IRC § 6211.

But how the Internal Revenue Code treats interest depends on the type of interest and the purpose for which we are considering the question. As a starting point, the statement in section 6601 that interest is treated as tax is limited by its own terms to "[i]nterest prescribed under *this section*" and "interest imposed by *this section*." "This section" refers to section 6601, i.e., interest on underpayments. Overpayment interest under section 6611 is not treated as tax, and an excess refund of overpayment interest cannot be recovered using deficiency procedures. *See Pac. Gas & Elec. Co. v. United States*, 417 F.3d 1375, 1381 (Fed. Cir. 2005).

But even interest on underpayments is not treated as tax for all purposes. Section 6601(e)(1) provides in part, "[a]ny reference in this title (except subchapter B of chapter 63, relating to deficiency procedures) to any tax imposed by this title shall be deemed also to refer to interest imposed by this section on such tax." In Mrs. LaRosa's case, that parenthetical reference to deficiency procedures is particularly notable. The definition of a rebate is found in section 6211(b)(2), which is found in subchapter B of chapter 63. Thus, the statement in section 6601(e)(1) that interest is treated as tax, by its very own terms, does not apply when defining what is or is not a rebate under section 6211.

Neither underpayment interest under section 6601 nor overpayment interest under section 6611 is considered a tax for purposes of determining a rebate. As a result, an erroneous refund consisting solely of interest is not a rebate and does not give rise to an unpaid tax or deficiency.

VI. *Conclusion*

The erroneous refund paid to the LaRosas was not a rebate and did not give rise to an unpaid tax or a deficiency. Because the erroneous refund does not constitute an unpaid tax or deficiency, Mrs. LaRosa is ineligible for innocent spouse relief under section 6015(f).

To reflect the foregoing,

*An appropriate order and decision will be entered.*