Opinion for the court filed by Circuit Judge DYK.
These two tax refund suits claim that the Internal Revenue Service (“IRS”) failed to issue deficiency notices as required by law, thus rendering the tax assessments made against the plaintiff-taxpayers invalid. The Court of Federal Claims dismissed taxpayers’ claims, holding that no notice of deficiency was required. While we agree with the taxpayers that deficiency notices were required, we conclude that the taxpayers have failed to establish that the failure to send the required notices was harmful error. We therefore affirm.
BACKGROUND
I
This case presents two questions. These are whether the IRS was required to issue deficiency notices to the taxpayers before making tax assessments, and whether, if such notices were required, the taxpayers in a refund suit can escape liability for taxes admittedly owed on the ground that the IRS failed to issue the required deficiency notices. Some background is essential to an understanding of these issues.
Under the Internal Revenue Code (“IRC”), when the IRS determines that a taxpayer has underpaid income taxes, it makes a deficiency determination. I.R.C. § 6212(a). In general, a deficiency is the amount by which the tax imposed under the Code exceeds the amount the taxpayer paid. See id. § 6211(a). After determining a deficiency, the IRS may proceed to collect the tax, first making a deficiency assessment, id. §§ 6201, 6213(c), and then issuing a “notice and demand letter,” specifying the amount due and demanding payment. See id. § 6303. If the taxpayers do not pay after demand, an automatic lien arises in favor of the United States upon all of the taxpayer’s property which continues until the time that the lien is either satisfied or extinguished. Id. §§ 6321-6322. Once the IRS has made a demand for payment, it has several options at its disposal to collect the unpaid tax, including levying on any property belonging to the taxpayer and satisfying the deficiency out of the sale of such property, id. §§ 6331, 6335, or instituting a civil action to enforce the lien, id. § 7403. In most circumstances, the IRS is prohibited from proceeding to assess and collect income taxes without first issuing a deficiency notice to the taxpayer that gives the taxpayer the option to either pay the tax (and sue for a refund in either the Court of Federal Claims or a federal district court pursuant to 28 U.S.C. § 1346(a)(1)) or challenge the IRS’ deficiency determination in the Tax Court under I.R.C. § 6213(a).
If the taxpayer elects to challenge the deficiency assessment in the Tax Court, assessment and collection are stayed pending the outcome of the Tax Court proceedings. Id. § 6213(a).[1] Thus, the receipt of the deficiency notice allows the taxpayer to *1355 litigate the lawfulness of the tax in a prepayment forum, before the Commissioner of Internal Revenue (“Commissioner”) initiates assessment and collection proceedings. See, e.g., Comm’r v. Shapiro, 424 U.S. 614, 616-17, 96 S.Ct. 1062, 47 L.Ed.2d 278 (1976).
The question of whether a notice of deficiency is required becomes more complicated when the taxpayer’s liability relates to his participation in a partnership.[2] Partnerships are pass-through entities that do not themselves pay federal income tax. Olson v. United States, 172 F.3d 1311, 1316 (Fed.Cir.1999). For most partnerships, when a dispute arises, the Code has established a procedure for determining the tax consequences of partnership activities and other partnership-wide issues in a partnership-level proceeding that is binding on all members of the partnership. See Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97-248, 96 Stat. 324 (codified at I.R.C. §§ 6221-6233) (“TEFRA”). After the partnership items are determined in the administrative proceeding before the IRS, the IRS issues a Final Partnership Administrative Adjustment (“FPAA”) to the Tax Matters Partner (“TMP”) and to each individual partner. See I.R.C. §§ 6223(a), (d)(2). Within ninety days after the date on which the notice of FPAA is mailed to the TMP, the TMP may file a petition for a readjustment of the partnership items in the Tax Court, the district court in which the partnership’s principal place of business is located, or the Court of Federal Claims. Id. § 6226(a)(l)-(3). Individual partners can opt out of the proceedings by settling with the IRS. Id. § 6224(c). After the conclusion of the judicial proceedings, the IRS can then assess individual partners with respect to the tax attributable to their distributive shares of the adjusted partnership items. See id. §§ 6225(a), 6230(a)(1), 6231(a)(6).
In general, a notice of deficiency is not required if the liability issue leading to the deficiency notice has already been resolved in the partnership-level proceeding. See id. § 6230(a)(1). The statute provides:
(a) Coordination with deficiency proceedings.—
(1) In general. — Except as provided in paragraph (2) or (3), subchapter B [deficiency notice requirement] of this chapter shall not apply to the assessment or collection of any computational adjustment.
(2) Deficiency proceedings to apply in certain cases.—
(A) Subchapter B shall apply to any deficiency attributable to—
(i) affected items which require partner level determinations (other
*1356 than penalties, additions to tax, and additional amounts that relate to adjustments to partnership items)....
Id. § 6230(a) (emphasis added). A “computational adjustment,” is defined as “the change in the tax liability of a partner which properly reflects the treatment ... of a partnership item.” See id. § 6231(a)(6). An “affected item” is defined as “any item to the extent that such item is affected by a partnership item.” Id. § 6231(a)(5).
Both parties agree that the obligation to provide notice here depends on the resolution of two separate issues. First, the parties agree that a deficiency notice is required if the tax deficiency calculation by the IRS does not involve a “computational adjustment,” which is defined as a “change in the tax liability of a partner which properly reflects the treatment under this sub-chapter of a partnership item.” Id. § 6231(a)(6). Second, they agree that, even if a computational adjustment is involved, notice is required if the deficiency is attributable to “affected items which require partner level determinations.” Id. § 6230(a)(2)(A)(i). However, the parties differ as to whether the deficiency assessed here involves a “computational adjustment,” and whether the deficiency involved “affected items which require [a] partner-level determination[ ].”
II
With this background in mind, we turn to the facts of these two individual cases at issue here. These cases are among thirty tax refund suits brought by partners of the various Greenberg Brothers Partnerships. In case number 2009-5008, Bush v. United States, taxpayer Bush was a limited partner in two Greenberg Brothers Partnerships: the Lone Wolf McQuade (“LWM”) and Cinema 84 partnerships. Bush v. United States, 78 Fed.Cl. 76, 77 (2007). Bush filed a joint return with his wife; the taxpayers were thus both husband and wife. In 1991, the IRS issued Notices of Final Partnership Administrative Adjustment for tax years 1983, 1984, 1985, and 1986 tax years to the TMP of LWM, disallowing certain deductions reported on the LWM partnership’s 1983-1986 returns. The IRS then issued FPAAs for Cinema 84’s 1985-1989 tax years, disallowing certain deductions reported on the partnership returns for those tax years.
The partnership disagreed, and a partnership-level proceeding resulted. The TMP filed petitions on behalf of LWM and Cinema 84 in the Tax Court on October 7, 1991, and January 8, 1992, respectively, challenging the IRS’ proposed adjustments for each partnership. On August 7, 1999, while the partnership proceedings were pending in the Tax Court, the Bushes and the IRS entered into two separate Form 906 Closing Agreements on Final Determination Covering Specific Matters (“Closing Agreements”).[3] The Closing Agreements resolved both partnership-level and individual partner-level issues. As to partnership-level issues, the *1357 parties agreed that no adjustment was required to the items reported in the partnership returns. The agreement also addressed partner-level issues concerning partner at risk capital contribution.[4] The partners’ at risk capital was not finally fixed by the settlement agreements. The agreements provided that the “at risk” capital would consist of $50,000 per partner (representing the original capital contribution) and would be adjusted upward in future years if the partnership earned taxable income or the partners made additional cash contributions to the partnership, including cash contributions in the form of payments on partnership notes. The agreement also did not waive the right to receive deficiency notices. As a result of the settlement, the Tax Court dismissed the Bushes from the partnership proceedings.
In July of 2000, the IRS issued Notices of Adjustment showing adjustments to taxpayers’ returns for 1985, 1986, and 1987 tax years. Subsequently, the IRS made the following deficiency assessments in accordance with the Notices of Adjustment: (1) $16,708.00 in tax and $42,660.44 in interest for 1985, (2) $10,817.00 in tax and $46,004.97 in interest for 1986, and (3) $9,635.00 in tax and $26,729.62 in interest for 1987. These deficiency assessments were calculated based on paragraphs 4, 5, and 6 of the Closing Agreements, and the IRS’ determination of the Bushes’ at risk capital amounts for those years. The IRS did not issue any notices of deficiency prior to making these assessments. In August of 2000, taxpayers paid the assessed tax and interest for the 1985-1987 tax years. The IRS did not initiate any collection proceedings against taxpayers.
*1358 In July of 2002, taxpayers filed refund claims with the IRS for the assessed tax and interest, and when the IRS denied these refund claims, taxpayers filed a refund suit in the Court of Federal Claims. In their motion for partial summary judgment on liability, taxpayers argued that the IRS was obligated to issue notices of deficiency before making any post-settlement assessments for tax years 1985, 1986, and 1987. Bush, 78 Fed.Cl. at 79. The failure to issue the deficiency notices, according to the taxpayers, meant that the assessments were unlawful, and that taxpayers were entitled to a refund. Id. The government filed a cross-motion for summary judgment, contending that the IRS was not required to issue notices of deficiency because the assessments were “computational adjustments” exempt from deficiency procedures under I.R.C. § 6230(a)(1). See id. at 80.
The Court of Federal Claims denied taxpayers’ partial motion for summary judgment and granted the government’s cross-motion for summary judgment. Id. at'86. While its reasoning is not entirely clear, the Court of Federal Claims appeared to hold that the assessments were “computational adjustments” because they could be calculated based solely on the Closing Agreements and taxpayers’ individual returns. Because taxpayers’ at risk amounts were stipulated via the Closing Agreements, the Closing Agreements allowed the IRS to determine the at risk amounts “with no other information than what could be found in the relevant tax returns.” Id. at 84. In other words, the Closing Agreements made the determination of taxpayers’ at risk amounts “simply computational.” Id. at 85.
The facts in Shelton v. United States, case number 2009-5009, are almost identical to the facts in the Bushes’ case. Shelton was a limited partner in Cinema 84. Shelton filed income tax returns for 1981, 1985-1987, 1989, 1992 and 1995, claiming deductions arising from his partnership investment. In 1991, the IRS issued a FPAA, disallowing deductions reported on tax returns from 1984-1989. While the partnership-level suit was pending in the Tax Court, Shelton and the IRS executed a Form 906 Closing Agreement almost identical to the Bushes’ Closing Agreement.[5] Based on the Closing Agreement, the IRS issued notices of adjustment, showing adjustments it made to Shelton’s allowed losses in the 1981 and 1984-1995 tax years and assessing additional amounts due for those years. After paying these new assessments and being denied a refund by the IRS, Shelton filed suit in the Court of Federal Claims, alleging that the assessments made in tax years 1981, 1985-1987, 1989, 1992, and 1995 were invalid due to the IRS’ failure to issue notices of deficiency for the tax years before making the assessments. See Shelton v. United States, Nos. 02-1042T, 04-1595T, slip op. at 6, 2007 WL 2710342 (Fed.Cl. Aug. 17, 2007) (consolidated). The Court of Federal Claims granted the government’s motion for summary judgment, incorporating the reasoning in Bush.[6] Id. at 6-7.
*1359 Taxpayers timely appealed. At oral argument, we requested supplemental briefing concerning the scope of I.R.C. § 6330, which provides for Collection Due Process (“CDP”) hearings, and the question of whether this particular procedural route to the Tax Court would have been available to taxpayers in this case.
We have jurisdiction pursuant to 28 U.S.C. § 1295(a)(3).
DISCUSSION
I
Taxpayers first argue that deficiency notices were required because the at risk capital amount under section 465 of the Code required a “partner level determination.” See I.R.C. § 6230(a)(2)(A)(i). This deficiency notice provision is designed to require a notice when the deficiency requires a further individualized determination applicable to the particular partner.[7] The government responds that no partner-level factual determinations were necessary, because determining the taxpayers’ amounts at risk involved the simple application of the provisions of the relevant Closing Agreement. We need not resolve this issue, however, because we conclude that the IRS was required to issue a notice of deficiency because the assessments did not meet the definition of “computational adjustment[s]” under section 6231(a)(6).
The taxpayers argue that the assessments were not computational adjustments because there were, by express agreement, no changes to the partnership items, and therefore, there could not have been any “change in tax [ ] liability ... which properly reflects the treatment under ... sub-chapter [C] of a partnership item.” Appellant Bush’s Br. 28. In rejecting taxpayers’ argument, the Court of Federal Claims appeared to hold that because no additional information was needed to arrive at the Bushes’ tax liability other than that contained in the Closing Agreement and the partner-level returns, no partner-level factual determinations were necessary and the assessments could be made through computational adjustments. Bush, 78 Fed.Cl. at 83 (citing Olson v. United States, 172 F.3d 1311, 1317 (Fed.Cir.1999)). We believe that this interpretation of the statute contradicts both its purpose and its plain text.
The statute requires a deficiency notice if the partner’s individual tax assessment is involved, and if that assessment does not follow from the partnership-level determination of partnership items. Such individual calculations have not been determined in the partnership-level proceeding, and the individual taxpayer is thus entitled to notice. Here, it is clear that taxpayers’ assessments were not the result of a computational adjustment, i.e., “the change in the tax liability of a partner which properly reflects the treatment ... of a partnership item,” I.R.C. § 6231(a)(6), that typically results from a TEFRA proceeding. While at risk capital can be a “partnership *1360 item” determined in a TEFRA proceeding, see Treas. Reg. § 301.6231(a)(3)-l(a)(l)(vi)(C), no such determination or adjustment to a partners’ at risk capital was made in the settlement. The settlement specifically stated that there was no change in “partnership items” as a result of the settlement. There was only a change in a partner-level item, namely, the imposition of a $50,000 cap on the at risk capital of each partner in each partnership.
The reference to “treatment” of a partnership item here is to the “change” in treatment resulting from a TEFRA proceeding or settlement. See I.R.C. § 6231(a)(6). Judge Prost’s opinion suggests that the use of the word “treatment” in section 6231(a)(6) suggests somehow that the “change in the tax liability” need not be the result of a change in the treatment of a partnership item in the TEFRA proceedings. See id. This simply makes no sense. The reference to “treatment” in section 6231(a)(6) is a reference to treatment determined in the TEFRA proceeding. The purpose of a TEFRA proceeding is to determine whether a partnership item should be treated differently than the partnership treated the item in the partnership return, i.e. the purpose of the TEFRA proceeding is to determine whether a change in tax treatment is warranted. See I.R.C. § 6221 (“[T]he tax treatment of any partnership item (and the applicability of any penalty, addition to tax, or additional amount which relates to an adjustment to a partnership item) shall be determined at the partnership level.”). If such a change in treatment is determined in the TEFRA proceeding, that change may bring about a “change in the tax liability” that constitutes a computational adjustment pursuant to section 6231(a)(6). But there is no basis for divorcing the issue of treatment from the result of the TEFRA proceeding (or a settlement of the proceeding). As section 6231(a)(6) makes clear, the computational adjustment is an “adjustmentf ] required to apply the results of a proceeding with respect to a partnership” (referring specifically to the consequences for indirect partners).
As the taxpayers correctly assert, there were no changes to their partnership items by virtue of Paragraph 1 of the Closing Agreements: “No adjustment to the partnership items shall be made for the taxable years 1983 through 1995 ... for purposes of this settlement.” Thus, there could not have been a change in tax liability to “properly reflect[ ] the treatment ... of a partnership item.” See I.R.C. § 6231(a)(6). The assessments were not computational adjustments, and the IRS was required to issue a notice of deficiency prior to making its assessment of tax.
The government argues that the determinations of taxpayers’ at risk amounts were computational adjustments requiring no notice of deficiency because “the IRS merely had to apply the terms of the Closing Agreements to [the Bushes’ and Shelton’s tax returns] through a computation.” Appellee’s Br. 30 (in 2009-5008). The government urges that so long as no individual partner-level factual determination is required, there is a computational adjustment. But this is not what the statute says — -a computational adjustment exists only if the partner’s individual liability changes to “properly refleet[] the treatment ... of a partnership item.” See I.R.C. § 6231(a)(6). The government at oral argument was wholly unable to explain what partnership-level adjustment affected the at risk determination. The government simply conflates the two provisions of the statute — “partner-level determinations” and “computational adjustment.”
*1361 The government argues that our decision in Olson v. United States holds otherwise. 172 F.3d 1311. We cannot agree. In that case, Olson and his wife entered into a settlement agreement with the IRS regarding his investment in a partnership. The settlement agreement determined the tax treatment of certain partnership items, including the disallowance of an investment tax credit at the partnership level. This investment credit had been claimed in the taxpayer’s individual return. The investment tax credits at issue in that case were concededly partnership items that were required to be determined at the partnership level. Id. at 1318. Thus, the determination of the individual partner’s distributive share of the disallowed investment tax credits ivas a “change in ... tax liability ... which properly reflects the treatment ... of a partnership item.” See I.R.C. § 6231(a)(6).
The government next argues that the applicable regulation on computational adjustments, Temp. Treas. Reg. § 301.6231(a)(6)-l T(a), demonstrates that no notice of deficiency was required here. 52 Fed.Reg. 6779, 6790-91 (Mar. 5, 1987). The government cites language in section (a) of the regulation, which provides that “changes in a partner’s tax liability with respect to affected items that do not require partner-level determinations ... are included in a computational adjustment.” Appellee’s Br. 37 (in 2009-5009) (quoting Temp. Treas. Reg. § 301.6231(a)(6)-l T(a)). However, we find this language unhelpful to the government. Nothing in the quoted sentence suggests that all affected items that do not require partner-level determinations are exempt from the deficiency proceedings, regardless of whether the assessment arises from a “change in the tax liability of a partner which properly reflects the treatment ... of a partnership item.” See I.R.C. § 6231(a)(6). Moreover, other parts of the regulation appear to support taxpayers’ interpretation of the statute.[8] We do not believe the regulation can be interpreted to have adopted the position taken by the government. Indeed, the government would lose even if the regulation favored the government because the statutory language is quite clear. The regulation cannot override the clear command of the statute. See Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837, 842-43, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984) (holding that where the language of a statute is clear, resort to the agency’s interpretation is improper).
Because the assessments did not meet the definition of “computational adjustment[s]” under section 6231(a)(6), the IRS was required to issue a notice of deficiency.[9]
II
Although we conclude that notices of deficiency were required in this case, *1362 the parties differ as to whether the failure to give notice here was prejudicial. The government argues that the failure to provide notice was not prejudicial. The taxpayers argue that the failure was prejudicial because it deprived them of a ticket to the Tax Court — that is, the opportunity to litigate their tax liability in the Tax Court. We conclude that taxpayers are not entitled to the remedy they seek (i.e., a refund of taxes paid for the tax years in question) because the IRS’ failure to issue a notice of deficiency constituted harmless error under the circumstances of this case.[10]
Although there is no constitutional right to a prepayment forum, see Reich v. Collins, 513 U.S. 106, 111, 115 S.Ct. 547, 130 L.Ed.2d 454 (1994); Phillips v. Comm’r, 283 U.S. 589, 595, 51 S.Ct. 608, 75 L.Ed. 1289 (1931), the I.R.C. has traditionally made such a forum available, as the Supreme Court recognized in Laing v. United States. 423 U.S. 161, 96 S.Ct. 473, 46 L.Ed.2d 416 (1976). The primary purpose of the deficiency notice provision is to prevent the IRS from initiating collection proceedings before the taxpayer has received a deficiency notice, and has had the opportunity to contest the assessment in the Tax Court. We have no doubt that in general the initiation of collection proceedings in the absence of a required deficiency notice is both unauthorized and wrongful. Where a proper deficiency notice has not been sent, the Supreme Court and our sister circuits have uniformly held that on a proper showing injunctive relief is available to prevent the IRS from initiating assessment or collection procedures.[11] If the tax has been collected utilizing statutory collection procedures, the courts have allowed taxpayers to secure repayment of amounts collected.[12] Indeed, these protec *1363 tions are explicit in the statute. The statute prohibits a “levy or proceéding in court for ... collection” until a deficiency notice has been mailed and the time for petitioning the Tax Court for review has expired. I.R.C. § 6213(a). The statute also provides:
Notwithstanding the provisions of section 7421(a), the making of such assessment or the beginning of such proceeding or levy during the time such prohibition is in force may be enjoined by a proceeding in the proper court, including the Tax Court, and a refund may be ordered by such court of any amount collected within the period during which the Secretary is prohibited from collecting by levy or through a proceeding in court under the provisions of this subsection.
I.R.C. § 6213(a) (emphases added). The injunctive provision is longstanding, dating to the Revenue Act of 1926, ch. 27, 44 Stat. 9. The refund provision was added in 1998 as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105-206, § 3464, 112 Stat. 685, 767 (codified at I.R.C. § 6213(a)). Significantly, the statute expresses concern with “collection” during the period that “collecting by levy or through a proceeding in court” is prohibited. The statute does not broadly provide for a refund of amounts paid by the taxpayer after assessment or provide for a refund where the taxpayer voluntarily pays the assessment before collection proceedings are initiated.
This case, however, presents just such a situation. The IRS did not issue a demand for payment (which is a predicate to collection, see I.R.C. § 6303) or initiate collection proceedings. The taxpayers do not seek to prevent the IRS from collecting the tax, nor do they seek repayment of funds improperly collected. Rather, the taxpayers paid the assessments and then sued for a refund, alleging that they are entitled to a refund simply because the IRS failed to issue the requisite notice, without regard to whether the tax was in fact owed, and without any showing that the taxpayers were prejudiced by litigating the tax issue in the refund proceedings rather than in the Tax Court. Nothing in the language of the statute confers such a refund right on the taxpayer, and the failure in the statute to provide for a refund under such circumstances strongly suggests that no such automatic refund was intended.
Under such circumstances, the question becomes whether the failure to provide the required notice before assessment was harmless error. The harmless error rule, as embodied in the federal harmless error statute, 28 U.S.C. § 2111, applies. See 28 U.S.C. § 2111 (“[T]he court shall give judgment after an examination of the record without regard to errors or defects which do not affect the substantial rights of the parties.”).[13] The Supreme Court has recently made clear that 28 U.S.C. § 2111 is applicable to all judicial review proceedings involving claims of administrative error, and that the same harmless error standard applies to both administrative errors and errors that occur as a result of the judicial proceedings them *1364 selves.[14]
Courts have held that an agency’s failure to act, resulting in some procedural error, is subject to a prejudicial or harmless error test. See, e.g., All Indian Pueblo Council v. United States, 975 F.2d 1437, 1443 (10th Cir.1992) (holding that agency’s failure to grant plaintiffs’ appeal on jurisdictional grounds did not prejudice plaintiff where all legal issues raised by the administrative appeal had been considered and decided on the merits by the district court). Significantly, several of our sister circuits have applied the rule of prejudicial error to the specific situation of the IRS’ failure to comply with the statutory notice requirements. See, e.g., Elings v. Comm’r, 324 F.3d 1110, 1112 (9th Cir.2003) (IRS’ failure to include date to file Tax Court petition does not invalidate deficiency notice where petitioner filed a timely petition); Smith v. Comm’r, 275 F.3d 912, 916 (10th Cir.2001) (same); Cook v. United States, 104 F.3d 886, 889-90 (6th Cir.1997) (IRS’ failure to timely notify the investigation targets of the issuance of a related third-party summons in accordance with statute was excused where no prejudice resulted from the delay). Thus, we conclude that the principle of prejudicial error is appropriately applied to the IRS’ failure to issue a notice of deficiency where no collection proceedings had been initiated.
Under the general harmless error standard, where a party’s “substantial rights” are not affected by an error, the error must be considered harmless. See 28 U.S.C. § 2111; Fed.R.Civ.P. 61. Here, taxpayers have failed to meet this burden of showing that their substantial rights were affected because they were denied access to the Tax Court to raise their offset claims. A failure to follow appropriate procedures only has significance if the use of an incorrect procedure could affect the outcome. Even in the context of a right to a jury trial, the denial of a jury trial has been held to be harmless error if the outcome could not have been affected — i.e., if the court concludes that no reasonable jury could have reached a contrary conclusion.[15] It is difficult to see why the right to resort to the Tax Court for a determination of tax liability should be afforded greater sanctity than the right to a jury trial in a civil case.
Here, taxpayers do not allege that there were any issues that they were unable to litigate in the context of the refund suit *1365 that they would have been able to litigate in a Tax Court suit for the redetermination of a deficiency. Here also there has been no showing that litigating the issues in question in the Tax Court as opposed to the Court of Federal Claims could have resulted in a different outcome. The one issue that the taxpayers sought to litigate was their claim that the government had failed to properly apply the provisions of the Closing Agreements in later years (thus resulting in an overpayment of tax and partial offset to the tax liability for the years in question). These claims were rejected. See Bush v. United States, 84 Fed.Cl. 90 (2008); Shelton v. United States, Nos. 02-1042T, 04-1595T, 2008 WL 4346134, at *2 (Fed.Cl. Sept. 23, 2008). The taxpayers do not claim that litigating this issue in the Tax Court could have made a difference. Under such circumstances, taxpayers have failed to establish that the error was harmful.
Taxpayers, however, argue that the Fourth Circuit in Singleton v. United States, 128 F.3d 833 (4th Cir.1997), reached a different result. The court stated that the deficiency notice “serves as a jurisdictional prerequisite for a taxpayer to challenge an assessment in Tax Court.... Because this notice was never sent, [petitioners] were deprived of them opportunity to contest the tax due,” id. at 839, and that taxpayers were entitled to a refund. However, in Singleton, unlike in this case, the IRS had already initiated collection proceedings, having made a demand for immediate payment and having proceeded to impose a lien on the taxpayer’s assets. See id. at 834. After the decision in Singleton, Congress acted both to clarify that the right to a refund as a matter of course only exists where collection proceedings were wrongly initiated, and to provide an additional Tax Court remedy to those who did not receive the requisite deficiency notice. See Internal Revenue Service Restructuring and Reform Act of 1998, Pub.L. No. 105-206, § 3401, 112 Stat. 685, 746 (codified at I.R.C. ch. 64) (“Taxpayer Bill of Rights Act”).
Under the Taxpayer Bill of Rights Act, if the IRS fails to provide the required deficiency notice, a taxpayer can contest the appropriateness of an IRS collection action in the Tax Court. The taxpayer begins with an appeal from an IRS Appeals Officer in a CDP hearing. See I.R.C. § 6330(d)(1). In the CDP hearing, the taxpayer may raise appropriate spousal defenses, challenge the appropriateness of collection actions, offer collection alternatives, and “raise ... challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.” I.R.C. § 6330(c) (emphasis added). Thus, although it may have been the case that a notice of deficiency was once a “jurisdictional prerequisite” to a taxpayer’s suit in the Tax Court for a redetermination of his tax liability, Laing, 423 U.S. at 165 n. 4, 96 S.Ct. 473, it appears that after the passage of section 6330, there is an alternate route to the Tax Court.[16]
We conclude that the IRS’ failure to issue deficiency notices was harmless error *1366 in the circumstances of this case, and that the taxpayers are not entitled to a refund. However, it is essential to make clear the limited nature of our holding. The IRS continues to have an obligation to issue a notice of deficiency where the statutes provide for such notice, and the taxpayer has tools at his disposal to resist illegal collection or to seek a refund of pursuant to the statute if amounts are improperly collected. What the taxpayer may not do is forgo his right to resist collection, voluntarily pay the tax, and then secure a refund of tax admittedly owed without showing prejudice.

AFFIRMED.

COSTS
No Costs.
Opinion concurring in the result filed by Circuit Judge PROST.

. That section provides: ''[If a petition has been filed with the Tax Court] ... no assess- *1355 merit of a deficiency in respect of any tax imposed by subtitle A, or B, chapter 41, 42, 43, or 44 and no levy or proceeding in court for its collection shall be made, begun, or prosecuted ... until the decision of the Tax Court has become final.”

. A partnership files an annual information return reporting items of income, deduction, and credit. I.R.C. § 6031; Treas. Reg. §§ 1.701-1, 1.6031(a)-l(a)(l). Individual partners then report their distributive shares of a partnership's income and deductions on their personal tax returns. See I.R.C. §§ 701-704. Partnership items are those items "required to be taken into account for the partnership's taxable year,” and any other items that the Treasury Secretary has deemed "more appropriately determined at the partnership level than at the partner level.” Id. § 6231(a)(3); see Treas. Reg. § 301.6231 (a)(3) — 1 (a). A nonpartnership item is defined as "an item which is (or is treated as) not a partnership item.” I.R.C. § 6231(a)(4).

. The Closing Agreements provided in relevant part:
1. No adjustment to the partnership items shall be made for the taxable years 1983 through 1995 [for LWM; for Cinema '84, 1984-1995] for purposes of this settlement.
2. The taxpayers are entitled to claim their distributive share of the partnership losses for 1983 through 1995 [for LWM; for Cinema '84, 1984-1995] only to the extent they are at risk under I.R.C. § 465.
3. The taxpayers’ amount at risk for 1983 through 1986 [for LWM; for Cinema '84, 1984-1989] is their capital contribution to the partnership.
4. The taxpayers' capital contribution to the partnership is $50,000.
*1357 5. Taxpayers’ qualified investment for computing investment tax credit is the amount at risk as set forth in paragraph #4.
6. The taxpayers are not at risk under I.R.C. § 465 for any partnership notes, entered into by the partnership to acquire rights in [motion pictures], whether or not assumed by the taxpayers. Any losses disallowed under this agreement are suspended under I.R.C. § 465. Such suspended losses may be used to offset the taxpayers’ pro rata share of any income earned by the partnership and/or other income in accordance with the operation of I.R.C. § 465.
7. To the extent the taxpayers make additional cash contributions to the capital of the partnership after 1986 [for LWM; for Cinema '84, 1989], the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.
8. To the extent the partnership earns net income the taxpayers' at risk will be increased in accordance with I.R.C. § 465.
9. To the extent the taxpayers make cash payments on the partnership notes after the date of execution of this agreement by the Commissioner and the taxpayers, the taxpayers' amount at risk will be increased in accordance with I.R.C. § 465.
15. Any refund claim attributable to the operation of this agreement shall be deemed to be timely filed and shall be allowed if it is filed with die IRS within one year of the execution of this agreement by the Commissioner of Internal Revenue. Any refund claim so submitted pursuant to this paragraph within 120 days after the execution of this agreement on behalf of the Commissioner of Internal Revenue shall be allowed as an offset pursuant to I.R.C. §§ 6402(a) and 6601(f) against any tax deficiencies resulting from this agreement

. Section 465 limits the deductibility of losses from certain ''passive” activities (such as holding, producing, or distributing motion pictures, see I.R.C. § 465(c)(1)(A)), to the amount a taxpayer is considered "at risk” at the close of the taxable year. Id. § 465. A taxpayer is generally considered to be at risk with respect to amounts borrowed to the extent that the taxpayer is personally liable for the repayment of such amounts. Id. § 465(b)(2)(A). A taxpayer is not at risk, however, “with respect to amounts protected against loss through nonrecourse financing, guarantees, stop loss agreements, or other similar arrangements.” Id. § 465(b)(4).

. The sole differences between the two cases appear to be the tax years at issue and the amount of the capital contribution to the partnership, which in the case of Shelton is $150,000.

. Both Shelton and the Bushes also raised additional offset claims in the proceedings below for additional tax years that are not raised in this appeal. The Court of Federal Claims held that the IRS properly denied the offsets. Bush v. United States, 84 Fed.Cl. 90 (2008); Shelton v. United States, Nos. 02- *1359 1042T, 04-1595T, 2008 WL 4346134, at *2 (Fed.Cl. Sept. 23, 2008).

. See, e.g., Roberts v. Comm'r, 94 T.C. 853, 861, 1990 WL 77203 (1990) (holding that a partner's at risk amount under I.R.C. § 465 required partner-level factual determinations where side agreements with third parties materially affected the amounts petitioners had at risk in each partnership); N.C.F. Energy Partners v. Comm'r, 89 T.C. 741, 745, 1987 WL 45298 (1987) (holding that question of whether or not a partner's underpayment was due to negligence, thus meriting an addition to tax, required a partner-level determination).

. For example, Temp. Treas. Reg. § 301.6231(a)(6)-lT(a) provides in part:
A change in the tax liability of a partner to properly reflect the treatment of a partnership hem under subchapter C of chapter 63 of the Code is made through a computational adjustment. A computational adjustment may include a change in tax liability that reflects a change in an affected item where that change is necessary to properly reflect the treatment of a partnership item. However, if a change in a partner's tax liability cannot be made without making one or more partner-level determinations, that portion of the change in tax liability attributable to the partner-level determinations shall be made under the provisions of subchapter B of chapter 63 of the Code (relating to deficiency procedures).
(emphases added).

. Judge Prost's opinion curiously suggests that the majority "decides that a taxpayer who enters a settlement agreement with the Internal Revenue Service ("IRS”) nonetheless has an unrestricted right to challenge issues *1362 resolved by that agreement again, in Tax Court.” Concurring Op. at 1366. Nothing in the majority opinion suggests that the taxpayer has the right to relitigate issues resolved by the settlement.

. While the government did not use the words “harmless error,” this is the essence of the government’s "no prejudice" argument. In a number of places throughout its brief, the government argues that even if it should have issued a notice of deficiency, such error resulted in no prejudice. See, e.g., Appellee’s Br. 35 n. 5 (in 2009-5008) ("Bush was not 'prejudiced' by not receiving notices of deficiency because, as explained below, he could not have disputed the assessments, even if he had been allowed to do so in Tax Court”); id. at 44 ("With no possible partnership-level or partner-level items for the Tax Court to consider, a notice of deficiency would be nothing more than a ‘ticket’ to a procedural Potemkin village.”).

. See, e.g., Shapiro, 424 U.S. at 616-17, 96 S.Ct. 1062 (”[I]f the Internal Revenue Service does attempt to collect the tax by levy or otherwise, before such exhaustion of remedies in violation of § 6213, the collection is not protected by the Anti-Injunction Act and may be restrained by a United States district court...."); Guthrie v. Sawyer, 970 F.2d 733, 736 (10th Cir.1992) ("[T]he statutory exception to the Anti-Injunction Act provided by I.R.C. § 6213(a) specifically authorizes an injunction prohibiting an assessment or levy when the taxpayer has not received a deficiency notice.”); Keado v. Comm’r, 853 F.2d 1209, 1214 (5th Cir.1988) (denying injunction requested by taxpayer where evidence was sufficient to establish as a matter of law that the IRS mailed taxpayer the requisite deficiency notices); Cool Fuel, Inc. v. Connett, 685 F.2d 309, 313 (9th Cir.1982) (recognizing the exception to the Anti-Injunction Act carved out by I.R.C. § 6213 where taxpayer did not receive a notice of deficiency before assessment).

. See Singleton v. United States, 128 F.3d 833, 837 (4th Cir.1997) (holding invalid collection of tax due absent issuance of a statutory notice of deficiency); Philadelphia & Reading Corp. v. United States, 944 F.2d 1063, 1069-70, 1076 (3d Cir.1991) (granting a refund for taxes paid as well as overpayments where IRS illegally collected taxes by levy *1363 without issuing the requisite notice of deficiency).

. The judicial review provision of the Administrative Procedure Act ("APA”) also includes a harmless error rule. See 5 U.S.C. § 706 ("due account shall be taken of the rule of prejudicial error”).

. See Nat'l Ass’n of Home Builders v. Defenders of Wildlife, 551 U.S. 644, 659-60, 127 S.Ct. 2518, 168 L.Ed.2d 467 (2007) ("In administrative law, as in federal civil and criminal litigation, there is a harmless error rule[J”) (citation omitted); see also Shinseki v. Sanders, — U.S. -, 129 S.Ct. 1696, 1704, 173 L.Ed.2d 532 (2009) (“We have no indication of any relevant distinction between the manner in which reviewing courts treat civil and administrative cases. Consequently, we assess the lawfulness of the Federal Circuit’s approach in light of our general case law governing application of the harmless-error standard.”).

. See, e.g., Cal. Scents v. Surco Prods., Inc., 406 F.3d 1102, 1109 (9th Cir.2005) ("The denial [of a jury trial] will be harmless only if no reasonable jury could have found for the losing party ....”) (quotation omitted); Rego v. ARC Water Treatment Co. of Pa., 181 F.3d 396, 401 (3d Cir.1999) (denial of jury trial was harmless because a judgment as a matter of law for appellee would have been warranted); Gupton v. Va., 14 F.3d 203, 206 n. 5 (4th Cir.1994) (denial of jury trial was harmless where district court properly could have granted judgment as a matter of law); Freeman Contractors, Inc. v. Cent. Surety & Ins. Corp., 205 F.2d 607, 612 (8th Cir.1953) (”[T]he erroneous denial of a jury trial is not prejudicial error where under all the evidence there is no issue of fact to submit to a jury.").

. See Prince v. Comm’r, 133 T.C. 12 (2009) (reviewing IRS determination as to underlying tax liability in a section 6330 proceeding de novo, because of the failure to send deficiency notice); Manko v. Comm'r, 126 T.C. 195, 204, 2006 WL 1049364 (2006) (holding in the context of a section 6330 proceeding that the IRS had improperly failed to issue a deficiency notice and barring collection of the tax).